# THE
## UNITED STATES DISTRICT COURT
FOR THE
## SOUTHERN DISTRICT OF FLORIDA
Miami Division

FILED BY_____D.C.

FEB 12 2021

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Lamont Collins

        **Plaintiff**

  **v.**

Case Number:

City of Miami "City"; Officer Kenneth Lewis[1]; Officer Wandler Philippe[1]; Doubletree Grand Hotel "DTGH".

       **Defendant(s)**

## COMPLAINT[2]

This Case comes before This Court after being dismissed without prejudice for 'failure to state a claim' (1:20-cv-23589-GAYLES).

**NOW COMES** The Plaintiff Lamont Collins, 'Pro Se', and **BRINGS NOW** these Constitutional Violations against The City of Miami "City"; Miami Police Department Officers Kenneth Lewis and Wandler Philippe, and, Doubletree Grand Hotel "DTGH".

Hereafter:
-"U.S.C 14" implies United States Constitution Amendment 14.
-"Internal Affairs" implies Miami Police Department Internal Affairs.
-"DTGH" implies Double Tree Grand Hotel.
-"Peace Officer(s)" will imply Law Enforcement and Correctional Officers.

## JURISDICTION AND VENUE

1.   Plaintiff brings his action under 42 U.S.C. §1983; Fourth, Fourteenth Amendments, and 42 U.S.C. §1985(3) of The United States Constitution;
2.   This Court has Jurisdiction pursuant to the following statutes:
   - 28 U.S.C. §1331 which gives district courts original jurisdiction over civil actions arising under the Constitution, laws or treaties of The United States.
   - 28 U.S.C. §1343 (3) which gives District Court(s) jurisdiction over actions to secure civil rights extended by The United States government.
3.   Venue is appropriate in This Judicial District under 28 U.S.C. §1391 because the events that gave rise to This Complaint occurred in This District.

---

[1]These Defendants operating under The Authority of The Color of Law are sued in their Official and Individual Capacities under 42 U.S.C. §1983.
[2]Claims are so related, that Defendants must read This Complaint in its entirety, and, MUST fully incorporate all footnotes herein, and make them a part thereof.

3.       Venue is appropriate in this Judicial District under 28 U.S.C. § 1391 because the events that gave rise to this Complaint occurred in this district.

## PARTIES

4.       The Parties

Lamont Collins
1545 Northwest 7th Avenue
Miami, Miami-Dade County
Florida, 33136
Deshawn_Collins@yahoo.com

Plaintiff is a Citizen of The United States and resided in The County of Miami-Dade, State of Florida, which is in This Judicial District during the events of This Complaint.

5.       The Defendant(s)

Defendant City of Miami 'City'
3500 Pan American Drive
Miami, Miami-Dade County
Florida, 33133
(305) 250-5300

Defendant City of Miami is a Municipal Corporation, and Political Subdivision of The State of Florida and is being sued for failure to train/supervise employees leading to violation of Plaintiffs Constitutional Rights under The Fourth and Fourteenth Amendments of The United States Constitution and remedied by 42 United States Code §1983. Defendant 'City' also sued for un-Constitutional Pattern/Custom of Deficient Police Internal Affairs Investigations, leading to validated casual violation of Plaintiffs (Citizens[1]) Rights. Plaintiff seeks damages.

**and;**

Defendant(s): Officer Wandler Philippe **AND** Officer Kenneth Lewis
Miami Police Department Officers
400 NW Second Avenue
Miami, Miami-Dade County
Florida, 33128
(305) 603-6640

Miami Police Department is an agency of The City of Miami. Defendant(s) Kenneth Lewis and Wandler Philippe are being sued in their Official Capacities under 42 U.S.C § 1983[2] for The False Arrest of The Plaintiff, resulting from their lack of supervision.

---

[1] This creates an issue of Great Public Concern.

[2] 42 U.S.C. 1983 provides relief for Citizens who's Constitutional Rights have been violated by person acting under The Authority of The Color of Law.

These defendant(s) are also being sued in their Individual Capacities for knowingly violating The Fourth Amendment Right of This Plaintiff to be free from unreasonable seizure of his person[1].

**And,** sued in their Individual Capacity for violating The Fourteenth Amendment Rights of The Plaintiff to Due Process of Law and Equal Protection of The Law. **And,** sued in their Individual Capacity for Conspiracy in violation of 42 U.S.C. §1985(3). In all events at bar Defendants Kenneth Lewis and Wandler Philippe have acted with The Authority of The Color of Law, and, Defendants acted in full Miami Police Department Uniform (under the color of law) during all relevant parts of This Complaint. Plaintiff seeks Compensatory and Punitive Damages.

**and;**

Defendant Doubletree Grand Hotel (DTGH)
1717 North Bayshore Drive
Miami, Miami-Dade County
Florida, 33132
(305) 372-0313

Defendant Doubletree Grand Hotel is being sued for negligent conduct leading to the violation of Plaintiffs Constitutional Rights; and sued for Conspiracy under 42 U.S.C. §1985(3)' and 42 U.S.C. §1983 (infra ¶64b). Article III of The United States Constitution 28 U.S.C. §1367 gives This Court Supplemental Jurisdiction of all claims at bar including Civil Action for State Negligence tort. Plaintiff seeks Compensatory and Punitive Damages.

## **ALLEGATION of NOTICE**:

Pursuant to Florida Statute 768.28 (7) which reads: '*In actions brought pursuant to this section, process shall be served upon the head of the agency concerned and the department or the agency concerned shall have 30 days within which to plead thereto*'.

The Plaintiff has presented This Claim in writing to The Head of The City of Miami, Mayor Francis Suarez at: fsuarez@miamigov.com and,
City of Miami Attorney Victoria Mendez law@miamigov.com

## **COMPLAINT[2]:**

6.      The Plaintiff while walking to dinner encountered a heavily occupied side-walk in front of The Double Tree Grand Hotel (DTGH) located at 1717 North Bayshore Drive in Miami, Florida on or about February 13, 2018, at or around 4:30pm. The Plaintiff decided to avoid the crowded sidewalk by using The Hotel driveway which is parallel to said side walk (EXHIBIT 41: Security Camera Plaintiffs Approach at 16:44:24). Upon entering the drive-way The Plaintiff noticed a female[3] standing some twenty yards in front of him to his left. The Plaintiff moved to his right to avoid The Female (EXHIBIT 41: Security Camera Plaintiffs Approach at 16:44:28-35). As The Plaintiff made his way to pass The Female, The Female looked at The Plaintiff and proceeded to walk directly into him (EXHIBIT 41: Security Camera Plaintiffs Approach at 16:44:33). The Plaintiff addressed The Female and began to walk away (EXHIBIT 41: Security Camera Plaintiffs Approach at 16:44:36-40). As The Plaintiff began walking away The Female shoved The Plaintiff, and began ranting explicitly while approaching The Plaintiff (EXHIBIT 41 Security Camera Plaintiffs Approach at 16:44:40-41). The Female then, sat her bag down, and

---

[1] Defendants Philippe and Lewis knowingly arrested The Plaintiff un-Constitutionally using The Authority of The Color of Law.

[2] All footnotes in This Complaint (not restricted to any section) are to be read with the sentence, fully incorporated therein, and made a part thereof.

[3] Later identified as Sandra Bernardi, and referred to as 'The Female' throughout This Complaint.

[4] Here "swatting" expresses The Female striking The Plaintiff around his wrist area. In said EXHIBIT you can see The Plaintiff deflecting these attempts to 'swat' at him.

aggressively pursued The Plaintiff, swatting[11] at his lower arms as The Plaintiff passively defended himself (EXHIBIT 41: Security Camera Plaintiffs Approach at 16:44:41-51)[1]. While defending himself from The Females advancing attack an unknown Male[2], identified by Defendant City of Miami Police Officers as Ghislain Fourqueler[2] (EXHIBIT 10: Inter-Office Memorandum 9-10-18), came running hostility out of DTGH to assist The Female in attacking The Plaintiff (EXHBIT 41: Security Camera Plaintiffs Approach at 16:44:49). Realizing The Male was about to commit battery upon him, The Plaintiff tried to retrieve his Mossy Oak Fishing Knife from his satchel, in an attempt to deter The Male. The Plaintiff unable to successfully withdraw The Fishing Knife retreated from the impending battery (EXHIBIT 41: Security Camera Plaintiffs Approach at 16:44:55). The Plaintiff retreated across the street as The Male gave chase. Once The Plaintiff successfully withdrew his Fishing knife from his satchel, The Male responded by eliminating his pursuit of The Plaintiff and re-entering DTGH (EXHIBIT 51: Hotel Entrance Surveillance Video at 16:45:30). The Plaintiff began to walk away from DTGH north, when The Male ran out of DTGH (EXHIBIT 51: Hotel Entrance Surveillance Video at 16:45:45-49) passing DTGH Security/Staff for the second time without interruption, this time with what appeared to be bottles and drinking glasses in each hand (EXHIBIT 51: Hotel Entrance Surveillance Video at 16:45:47 and 16:45:48). DTGH security staff made no attempt to deter The Male as The Male emptied the contents of the glasses on the ground in front of them and ran after The Plaintiff (EXHIBIT 51: Hotel Entrance Surveillance Video at 16:45:50) throwing the contents of each hand at The Plaintiff, as The Plaintiff dodged the glasses and bottles. The Plaintiff withdrew his fishing knife again, and was able to create enough distance from The Male to continue walking away north (EXHIBIT 61: Side Camera at 16:46:08-27).

7.      The Male followed The Plaintiff north away from DTGH running directly at The Plaintiff (plaintiff EXHIBIT 61: Side Camera 16:46:28), startling The Plaintiff, causing The Plaintiff to drop his cellular phone, The Male picked up The Plaintiffs cellular phone, smashed it into the ground, The Plaintiff again retrieved his fishing knife as a deterrent to The Male, and again The Male retreated into DTGH, past DTGH Security/Staff, into DTGH (EXHIBIT 51: Hotel Entrance Surveillance Video at 16:47:59). The Plaintiff picked up his now shattered cellular phone and realized it had become inoperable. The Plaintiff became instantly determined to make sure The Male was held responsible for the damage to his cellular phone. The Plaintiff returned to DTGH and spoke with a man he noticed was watching during the entire encounter[3]. The man identified himself as a DTGH Security Member, and suggested The Plaintiff 'just leave' because The Male and Female had left DTGH. The Plaintiff asked this DTGH Security Member to call Law Enforcement because The Plaintiff knew The Male and Female had retreated inside DTGH, and Plaintiff made it clear that he would not leave without holding The Male responsible for breaking his cellular phone. The DTGH Security Member alerted The Plaintiff, that Law Enforcement had been called by his staff 'some time ago'.

8.      The Plaintiff and this DTGH Security Member waited together over 20 minutes for Miami Law Enforcement to arrive. During this time, The Male and Female assailants had not been seen since The Male walked back into DTGH, past DTGH Security/Staff without interruption (EXHIBIT 51: Hotel Entrance Surveillance Video at 16:47:59). While waiting for Law Enforcement to arrive, The Plaintiff sat ten (10) yards from The Main Entrance, and had casual conversation with said DTGH Security Member about The Plaintiffs cellular phone. DTGH Security/Staff didn't make any attempt to locate or question The Male, Female

---

[1]The Plaintiff remained conscious, as not to appear physically threatening to The Female.
[2]City of Miami Police Department Internal Affairs identified The Male as Ghislain Fourqueler (plaintiff EXHIBIT 10) a foreign national, however, The Plaintiff through court records correctly identified 'The Male' as Ghislain Fourquier, a resident of Miami-Dade County with an arrest record for Assault, and referred to as 'The Male' throughout This Complaint.
[3]This man can be identified in Plaintiff (EXHIBIT 51: Hotel Entrance Surveillance Video at 16:44:02). He is a white male with a white long sleeve button down shirt and dark pants. This man is seen walking up the three steps in this EXHIBIT at 16:44:24 and appears to have something in his right back pocket. This male is referred to as 'DTGH Security Member' though out This Complaint.

Assailants, nor question The Plaintiff during this time.

9.      Miami Law Enforcement arrived and The Plaintiff made first contact with Defendant
Officer Wandler Philippe, and explained the events that necessitated the presence of Law
Enforcement (described supra @ ¶ 6-8). The Plaintiff made clear to Defendant Philippe that he
wanted to make a police report concerning his shattered cellular phone. Defendant Philippe
asked The Plaintiff to wait while he spoke with The DTGH Security Member who was waiting
with The Plaintiff. They spoke out of the hearing of The Plaintiff. Defendant Philippe returned to
The Plaintiff and said The Male and Female had left, so The Plaintiff should 'just leave',
repeating exactly what The DTGH Security Member told The Plaintiff before City of Miami
Law Enforcement arrived (supra ¶ 7). The Plaintiff refusing to leave without a police report
concerning his cellular phone explained that he saw The Male who broke his phone retreat past
DTGH Security/Staff into DTGH (plaintiff EXHIBIT 51: Hotel Entrance Surveillance Video at
16:47:59), and insisted The Male be located, and a police report be made. At some point after
this, Officer Philippe searched Plaintiffs bag and procured his fishing knife. Plaintiff explained
that he had used the knife to deter The Male. At, or around this time, another Officer of Miami
Law Enforcement arrived (Defendant Kenneth Lewis). The First Officer (Defendant Phillipe)
spoke with The Second Officer (Defendant Lewis) outside of hearing of The Plaintiff, returned
to The Plaintiff, handcuffed The Plaintiff despite Plaintiffs protest to being handcuffed, put The
Plaintiff into the back of his marked City Patrol Vehicle, which The Plaintiff also protested. The
Officers then went into DTGH with The DTGH Security Member, found The Male and Female,
returned after about 20 minutes. One of The Law Enforcement officers alerted The plaintiff of '
surveillance video', and that The Plaintiff would be arrested for assault with a deadly weapon.

10.     After The Plaintiff was released from jail, and all arresting charges dismissed, The
Plaintiff filed a complaint against the arresting Officers Defendant Wandler Philippe and
Defendant Kenneth Lewis at Defendant City of Miami Police Department Internal Affairs
(EXHIBIT 04: Internal Affairs Section Intake Form). The Plaintiff filed a recorded complaint
(plaintiff EXHIBIT 45: IA Statement of Complainant LC) regarding his false arrest, fabrication
of The Arrest Affidavit (plaintiff EXHIBIT 03: Arrest Affidavit), and the failure of Defendant
Lewis to generate a Police Report concerning his cellular phone which was broken by The Male
(Ghislain Fourqueler) who can be seen in surveillance video consistently attacking The Plaintiff.
City of Miami Police Department Internal Affairs ignored The Plaintiffs complaint of False
Arrest and fabrication of The Arrest Affidavit, and focused its entire Investigation on The
Plaintiffs cell phone with inept precision (plaintiff EXHIBIT 10: Inter-Office Memorandum 9-10-
18).

**STATEMENT OF MATERIAL ISSUES OF FACT; causing, THIS ACTION for DAMAGES; as RELATED TO OFFICER WANDLER PHILIPPE and OFFICER KENNETH LEWIS in their 'official capacities' for Defendant 'City' reckless disregard to supervise said Officers, leading to Plaintiffs denial of Liberty, Illegal Detainment, and False Arrest (Fourth Amendment) remedied by 42 U.S.C. §1983. Plaintiff seeks Monetary Damages for his Injuries.**

11.     Defendant 'City' Police Officer Kenneth Lewis, alerted the detained (infra ¶94) Plaintiff of his arrest after referring to 'surveillance video' (supra ¶ 9). This 'surveillance video' (infra ¶39) apparently obtained from 'the lobby' is also mentioned in plaintiff EXHIBIT 03, which is Officer Kenneth Lewis's sworn arrest affidavit. The material nature of this 'surveillance video' was used maliciously for probable cause to arrest Plaintiff. *'A Fourth Amendment violation can be established if a Defendant can show that officers acted in a reckless disregard with a high degree of awareness of the probable falsity of statements contained in arrest warrant application'.* (Forest v Pawtucket 377 F.3d 53). Plaintiff EXHIBIT 41: Security Camera Plaintiff Approach at 16:44:35 shows the initial contact between The Plaintiff and The Female. The Plaintiff insists that this video¹ should have been used to resolve conflicts of statements obtained by Defendants Lewis and Philippe². Plaintiff EXHIBIT 41 shows The Plaintiff address the Female after she looks directly at him and proceeds to walk directly into his path (EXHIBIT 41: at 16:44:36). This EXHIBIT 41 shows The Female then shove The Plaintiff, as The Plaintiff attempts to walk away (EXHIBIT 41 at 16:44:39). This EXHIBIT 41, shows The Plaintiff backing away from The Female, and The Female continuing to approach The Plaintiff aggressively (EXHIBIT 41: at 16:44:41). The Female then sat her bag down and aggressively pursued The Plaintiff. The Male came running hostilely at The Plaintiff, kicking off his shoes preparing an attack upon The Plaintiff (EXHIBIT 41: at 16:44:49). This material evidence (plaintiff EXIHIBIT 41) contradicts the statements written in Defendant Lewis's sworn Arrest Affidavit (plaintiff EXHIBIT 03: Arrest Affidavit). Departmental Order 11, Chapter 8.3, states, *'It is the responsibility of all officers who respond to police related incidents to obtain all appropriate information and complete the appropriate reports. It is also the responsibility of the officer to ensure accuracy and completeness of every report written. The officer will also ensure that these reports are turned in to his/her Sergeant for review at the end of his/her tour of duty.'* Defendant 'City' Police Officer Kenneth Lewis wrote in his sworn arrest affidavit, *'defendant became very aggressive, then he pulled up his shirt to expose the knife that he had in his pants and defendant stated that he was going to kill her'.* Defendant 'City' Police Officer Kenneth Lewis should have immediately known these statements were false after he procured the 'surveillance video' written into in his sworn arrest affidavit supra. Plaintiff never had on a shirt, attempted to walk away as The Female became aggressive, and Plaintiff's fishing knife was in his bag. There are no articulable fact to support Plaintiffs arrest, see Departmental Order 11, Chapter 1.7 at paragraph 50 infra.

12.     Defendant 'City' Police Departmental Order 1, Chapter 11.6.20.1 states, *'Members and civilian employees of the Department shall not (under any circumstances) manufacture, destroy, remove from the scene, or convert to personal use any evidence or other material found in connection with an investigation of a crime. All evidence or other material shall be properly collected, identified, preserved, and turned into the Department's Property Unit and properly*

---

¹ To date the surveillance video Defendant 'City' Police Officer Kenneth Lewis referred to in his Sworn Arrest Affidavit has never been collected per Defendant 'City' Policy (¶12, 22).

² Upon arrival Defendant Philippe and Lewis first contacted The Plaintiff who explained the events at bar (¶6-8), then they received contradictory statements from The Male³ and Female⁴. (plaintiff EXHIBIT 52 at 2:32). (plaintiff EXHIBIT 50 at 3:55).

³ Ghislain Fourquier is referred to as 'The Male' throughout This Complaint. He can be identified in Plaintiff EXHIBIT 41 at 16:44:49 kicking off his shoes preparing an attack upon The Plaintiff.

⁴ Sandra Bernardi is referred to as 'The Female' throughout This Complaint, and identified as The Female attacking The Plaintiff in EXHIBITS.

*recorded therewith for safekeeping.*' To date, no 'surveillance video' from 'the lobby'[1] has been procured or seen by anyone other than Defendant 'City' Officers supra, and DTGH Security/Staff who provided said video. Defendant 'City' Police <u>Departmental Order 11, Chapter 16.4.29</u> states, '*All reports concerning an arrest, must be reviewed by a supervisor. The supervisor must ensure the reports are thoroughly completed and contain the proper elements.*' At bar, The Arrest Affidavit was not thoroughly completed and did not contain the proper elements, the 'lobby surveillance video' was never procured per said Defendant 'City' <u>Departmental Order 11, Chapter 11.6.20.1</u> supra this paragraph. Plaintiff complains Triers of Fact can infer Defendant(s) Lewis and Philippe knew Supervisor(s) would not insure thoroughness of all reports (as identified here by Departmental Order) due to routine deficient supervision[1] as explained infra at ¶67-76. The Plaintiffs person was seized for over a month due to Defendant 'City' Police Supervisors failure to identify the falsely sworn arrest affidavit submitted by Defendant 'City' Police Officer Kenneth Lewis. Supervisors also failed to insure procurement of the only material physical evidence (surveillance video). Here, we see un-thorough reports, with improper elements, validated by Defendant 'City' Supervision. See <u>Departmental Order 11, Chapter 8.3</u> supra at ¶11.

13.     Plaintiff <u>EXHIBIT 41</u> supra proves the description of events written in Defendant Lewis' sworn Arrest Affidavit materially false. Defendant Lewis and Philippe maliciously provided their Supervisors material false statements written directly into The Sworn Arrest Affidavit. Upon review, with respect toward Departmental Policy, these malicious errors should have been found. The Plaintiff complains that lack of appropriate supervision of Defendants Philippe and Lewis caused The Plaintiff to be falsely detained, and arrested. The Plaintiff questions, what Officer under appropriate Supervision, would provide their supervisor with direct evidence of their purposeful malicious behavior. At bar, The Plaintiff has several surveillance videos that captured the events at bar such as plaintiff <u>EXHIBIT 41</u>, <u>51</u>, <u>61</u>, and <u>71</u>, non of which were procured, or, are mentioned in Defendant 'City' Police Officer Kenneth Lewis's arrest affidavit. These videos show the exact opposite of what is written in The Sworn Arrest Affidavit of Defendant 'City' Police Officer Kenneth Lewis. Plaintiff denies Officers under appropriate supervision would supply their supervisors with evidence that directly contradicts themselves, and then, write falsities into The Official Reports that supervisors are required to acquire, and review. <u>Departmental Order 11, Chapter 1.5.8</u> states, '*District Sergeant duties and responsibilities include, but are not limited, to: train subordinates, ensure departmental records accident and arrest reports, comply with departmental guidelines.*' Here we see lack of Defendant 'City' Police supervision at multiple levels, this, in violation of said Departmental Policy, lead to injury to Plaintiffs person thorough detainment, arrest, and, loss of his Liberty. Between Defendant 'City' Police <u>Departmental Order 11, Chapter 16.4.29</u> mentioned supra in paragraph 12, and, <u>Departmental Order 11, Chapter 1.5.8</u> mentioned here, the obvious oversight of material elements, falsely written[2] within Officer Kenneth Lewis's arrest affidavit by his supervisors, and, the non-procurement of the material 'surveillance video' from the lobby, would infer to The Triers of Fact, lack of supervision; leading to deficient performance by Officers Kenneth Lewis and Wandler Philippe; resulting in The violation Plaintiffs Fourth Amendment Constitutional Right to be secure in his Person from detainment and arrest. This lack of supervisorial oversight infers for Triers of Fact that Defendant 'City' lack of supervision was 'moving force' behind his illegal detainment, false arrest and loss of Liberty.

---

[1] Defendant 'City' Police Internal Affairs found no violations in procedures of Defendant 'City' Police Officer Kenneth Lewis's performance of duties here, because Defendant 'City' Internal Affairs conducted a deficient Investigation (Infra ¶75).

[2] Defendant 'City' has yet to address The False Statements written in Defendant Lewis's sworn Arrest Affidavit, or, the oversights of its Police Supervisors with regard to The False Statements within The Arrest Affidavit.

14.     In addition to paragraph 13 supra, it cannot be said that Defendant 'City' did not know that, non-supervision of Police Officers for conformity to Departmental Policies, is necessary or, the natural consequence of such would be a casual deprivation of The Constitutional Rights upon The Population to which they serve, including Plaintiff. Departmental Order 11, Chapter 1.6 Roll Call Procedures. Departmental Order 11, Chapter 1.6.1 Roll Call Training, states, '*Field Training Sergeants and Field Training Lieutenants are responsible for planning and organizing roll call training to meet the needs of departmental personnel. Supervisors are encouraged to maintain contact with the Training Unit to ensure the most current information and techniques are being utilized. Roll call training may consist of: Reading and discussing Training, Legal, Special, and Official Bulletins; Reviewing new and revised Departmental Orders and Standard Operating Procedures; Discussions and review of legal bulletins, new laws and Ordinances; Recent State and Supreme Court decisions; Line inspections to evaluate officers readiness to assume duty; Subjects of departmental-wide concern.*' Infra at paragraph 15, Plaintiff will show that Defendant 'City' has known that supervision of Officers, as well as first-line supervisors, has been '*subject of departmental-wide concern*', ready for continuous 'roll call' training. Additionally, Plaintiff complains The Triers of Fact will infer, lack of supervision and training when officers fail to procure the only physical material evidence (surveillance video), and this goes un-noticed.

15.     '*To establish liability for a city's deliberate indifference a plaintiff must present some evidence that the city knew of a need to train or supervise in a particular area and municipality made a deliberate choice not to take action,*' (American v. Miami 650 F.Supp.2d 1270 at [10-13]). On March 10, 2016 Defendant 'City' entered into a binding Constitutional Policing Agreement[1] with The United States Department of Justice, to address, '*ensuring that police services continue to be delivered to the people of The City of Miami in a manner that fully complies with The Constitution and Laws of The United States,*' (plaintiff EXHIBIT 23: Constitutional Policing Agreement of 3-10-16 (at page 1: I.A.1)). '*The Parties enter into this Agreement jointly to continue to support vigorous and Constitutional Law Enforcement,*' (plaintiff EXHIBIT 23: Constitutional Policing Agreement of 3-10-16 (at page 2: I.B.8)). This Agreement states at section IV (introduction) page 7: '*MPD and the City shall ensure that all supervisors, in patrol as well as specialized units, provide the close and effective supervision necessary for officers to improve as police officers; to police actively and effectively*'. This Agreement at Section IV, 41: '*MPD first-line supervisors shall provide, and shall be held accountable for providing, the close and effective supervision necessary to direct and guide officers, as described in Departmental Order 11, and other relevant Departmental Orders, standard operating procedures and established guidelines.*' Supra at paragraph 12, Defendant 'Cities' supervisors deliberate indifference to Departmental Order 11, Chapter 16.4.29 creates a casual connection leading to Plaintiffs detainment and false arrest, due to Defendant 'City' Police Supervisors failure to ensure 'proper elements', and 'thorough correctness' of Defendant Lewis's Arrest Affidavit, as per Departmental Policy. Also, Supervisors failed to correct the non-procurement of the material surveillance video mentioned in Defendant 'City' Police Officer Kenneth Lewis's arrest affidavit (to date this video has never been seen). Supervisor should have recognized that Officer Lewis had not ensured the accuracy of The Arrest Affidavit per Defendant 'City' Departmental Order 11, Chapter 8.3 as also identified specifically by The United States Department of Justice in its Constitutional Policing Agreement[1] (supra). Plaintiff suggest EXHIBIT 23 establishes inference for The Triers of Fact to determine Defendant 'City'

---

[1]Plaintiff calls this Agreement 'Constitutional Policing Agreement' at bar; it is represented as plaintiff EXHIBIT 23 and may be identified by Defendant 'City' under another name.

has been aware of deficiency regarding lack of supervision of its Officers, particularly with regard to 'Departmental Order 11', which is the exact Departmental Order The Plaintiff mentions here.

16.     Departmental Order 11, Chapter 1.5.8 states, '*District Sergeants Supervisors are responsible for ensuring the efficiency, discipline, and productivity of officers under their supervision. They shall motivate, train and direct their employees to carry out the mission and goal of the department*'. Departmental Order 11, Chapter 2.6 Goals: Departmental Order 11, Chapter 2.6.1.1 states, '*to provide an evaluation process whereby determinations can be made as to whether policies and procedures are being implemented as intended and whether efficient, effective, and accepted management principles are being practiced.*' Departmental Order 11, Chapter 6.1 Policy, states, '*The primary goal is the development of a police officer public service aide able to work in a solo assignment in a safe, skillful, productive, and professional manner; consistent with the standards set by the Miami Police Department.*' Chapter 6.4.9.2 states, '*The F.T.O (field training officer) must understand that the effectiveness, image, and the future of the Department are substantially decided by the quality, professionalism and ethics of its personnel.*' The supervisorial requirements here of Defendant 'City' Departmental Order 11, as identified specifically by The United States Department of Justice, in particular to be '*ensured*' by supervisors (¶ 15) for Constitutional Policing, are at bar, shown obsolete. We can see the prudence of The United States Justice Departments identification of the importance of Defendant 'City' to ensure its Officers follow its rules, specifically Departmental Order 11 to ensure Constitutional Policing.

17.     Said Constitutional Policing Agreement states at Section IV, 46.: '*Captains and lieutenants will continue to closely and effectively supervise the first-line supervisors and officers under their command. MPD captains and lieutenants will continue to ensure that all first-line supervisors and officers under their command comply with MPD policy, State and Federal Law, and the requirements of this Agreement.*' Said Constitutional Policing Agreement states at Section IV, 47.: '*MPD will continue to ensure that captains and lieutenants at any level are held accountable for the quality and effectiveness of their supervision, including whether captains and lieutenants identify and effectively respond to uses of force or misconduct, as part of their performance evaluations and through non-disciplinary corrective action, or through the initiation of formal investigation and the disciplinary process. Supervisors shall be subject to discipline for failure to report and remedy misconduct they knew or reasonably should have known occurred. MPD shall continue to develop and implement metrics to assess supervisors' performance.*' At bar Plaintiff complains that there is known supervisorial failure at all levels, within Defendant 'City' Police Department which infers deliberate indifference.

18.     For Defendant 'City' to be liable at bar for failure to supervise or train its police officers, '*its failure to train and supervise must amount to deliberate indifference to the rights of person with whom the police come into contact*', (American v. Miami 650 F.Supp.2d 1270 at [10-13]). Plaintiff complains The Triers of Fact can infer that Defendant 'City' has shown deliberate indifference in that it has been previously identified that supervisors need to be monitored closely to ensure their subordinates are following Policy. Not only have supervisors at bar failed to supervise Patrol Officers, but supervisors of the Patrol Officers, are not being appropriately supervised. At bar we see Patrol Officer Kenneth Lewis writing false information into Sworn

Arrest Affidavit, and not procuring material evidence (surveillance video) per Departmental Policy, all of which violate Defendant 'City' Police Departmental Policy, and has been identified for Defendant 'City' to correct, yet, at no level of Supervision, was this failure identified by supervisors, causing Plaintiffs prolonged[1] injury of seizure and loss of Liberty; these oversights do not procure Constitutional Policing, and overlooks prudent opportunities for training that ensures Constitutional Policing, which was the goal of Defendant 'City' and The United States Justice Department when they entered into The Constitutional Policing Agreement supra including ¶15.

19.    '*Proof of actual knowledge of Constitutional violations is not however an absolute prerequisite for imposing supervisor liability. This Court has consistently held that reckless disregard on the part of a supervisor will suffice to impose liability*', (Howard v. Adkison 887 F.2d 138 at [6]). At bar, not only did Defendant 'City' agree with The United States Justice Department to guard against deficient supervision of its Officers through The Constitutional Policing Agreement, failure to do so, could be inferred as reckless disregard or indifference for Triers of Fact.

20.    Plaintiff complains infra (infra ¶21 – 26) that where a succession of mistakes by Defendants Philippe and Lewis are present during the course of one arrest (supra ¶ 6-9), that leads to deprivation of Plaintiffs Fourth and Fourteenth Amendment Rights (to be free from unreasonable seizure, and arrest; and to procure, Due Process and Equal Protection of The Law), it is an indication of lack of supervision, thus training (Defendant 'City' will not deny that Departmental Policy Demands Officers know Constitutional Rights of Citizens). Plaintiff insists that where there is appropriate supervision, incorrect procedures that violate Departmental Policy is minimal, and, least likely to be implemented in succession such as at bar (infra at ¶ 21 - 26); and, where there is appropriate supervision, application of incorrect Departmental Policy would become increasingly minimized, unlike at bar. The confederated succession of mistakes by two Defendant 'City' Officers, demonstrate a clear need of appropriate supervision. Further, Plaintiff complains, that Defendant 'City' vesting of confidence in Officers Wandler Philippe and Kenneth Lewis to uphold The Laws of The United States, and The City of Miami, goes against its own Policies because Miami Police Departmental Policy requires Officers to know all Departmental, Local and Federal Rules, and Laws; thus indicating that Defendant 'City' of Miami hasn't trained these Defendants to know their policy, or fails to supervise them accordingly, thus validating their non-conformance to said Laws, Policies and Procedures. '*Proof of actual knowledge of Constitutional violations is not however an absolute prerequisite for imposing supervisor liability. This Court has consistently held that reckless disregard on the part of a supervisor will suffice to impose liability*', (Howard v. Adkison 887 F.2d 138 at [6]). Defendant 'City' Police Officers Kenneth Lewis and Wandler Philippe had such confidence in Defendant 'City' Supervisors lack of supervision, that they materialized, recognizably false evidence, into The Sworn Arrest Affidavit (surveillance video 'lobby'), and felt no need to procure said evidence per Defendant 'City' Departmental Policy; thus manufacturing evidence to procure The Plaintiffs arrest, validated by Defendant 'City' despite written Policy.

**Language Barriers**:
21.    In Miami where two languages are spoken regularly, and tourist come from all over The World, The Plaintiff complains that Defendants Philippe and Lewis could not have used correct

---

[1] At any time Defendant 'City', or its Police Supervisors could have identified the errors leading to Plaintiffs arrest by its Officers. As of date, Defendant 'City' has not identified deviations from said Departmental Policies of The Officers and Supervisors at bar, nullifying whatever purpose was purposed by implementing said Departmental Orders; Plaintiffs incarceration was prolonged as he fought to prove the allegations written into Defendant Kenneth Lewis' Arrest Affidavit false. The Charges were eventually dismissed, Defendants never had, or have now, any material evidence to support The Arrest.

Departmental Policy at bar, allowing The Male to translate for the alleged victim, and, if so, this 'supervision' is deficient. Appropriate supervision would have either trained these Defendants prior to their actions, or identified this need of correction. In Plaintiff <u>EXHIBIT 52: Internal Affairs Statement of Officer W. Philippe at 4:34</u> Defendant Philippe states that the witness, (Ghislain Fourqueler[1], was translating French into English for himself (Defendant Philippe) and Defendant Lewis. Ghislain Fourqueler (The Male) was translating for The Alleged Victim (The Female) who apparently spoke only French. Defendant Philippe also states that he was translating for Defendant Lewis[2] (plaintiff <u>EXHIBIT 52: Internal Affairs Statement of Officer W. Philippe at 4:44</u>). In a community such as Miami-Dade County where foreigners are abundant, and National Security is a priority, The Plaintiff insists that The Finders of Fact will infer, in light of the totality of Evidence at Bar, that there has been a reckless disregard to The Supervision of Defendants Philippe and Lewis. Plaintiff complains that proper supervision includes identification of needed training. Plaintiff complains, it is inappropriate for a suspect, to be a primary witness, against the person who has confirmed him as The Suspect, when there are other witnesses available. Defendant Philippe, and Lewis, spoke with The Plaintiff first (plaintiff <u>EXHIBIT: 52 Internal Affairs Statement of Officer W. Philippe at 2:32</u>, and plaintiff <u>EXHIBIT 50: Internal Affairs Statement of Officer Kenneth Lewis at 5:07</u>) and The Plaintiff described Ghislain Fourqueler (The Male) as the person who assaulted him and damaged his property (cellular phone) (supra at ¶ 9). Now to use The Males testimony to indict and arrest The Plaintiff, against the material evidence, is erroneous. In essence, testimony wasn't taken from The Alleged Victim, because it was taken by The Plaintiffs assaulter. Defendants Philippe and Lewis have no idea of The Alleged Victims true testimony that day. No recorded statement was taken. Plaintiff complains language translation policy was not followed, or is inconsistent with The United States Constitutions Due Process Clause contributing to Plaintiffs false arrest.

**Primary Officer**:

22.     <u>Department Order 11, Chapter 1.3.4</u> states, '*The primary officer assigned to a call for service or an officer who self-initiates a call for service is responsible for the preliminary investigation of that crime or incident. Under some circumstances, the primary officer's preliminary investigation may constitute the entire investigation of the crime or incident as in the on-scene arrest[3] of an offender. In most instances however, the primary officer will be involved in the preliminary investigation only while the responsibility for the follow-up investigation of the offense will reside with an investigator from a specialized unit. In conducting preliminary investigations of crimes, offenses, incidents, or conditions, the primary officer is responsible for the following: 1) Observing all conditions and events in and around the crime or incident scene. 3) Maintaining and protecting the crime scene and arranging for the collection of evidence. 4) Interviewing the complainant, witnesses and suspects. 5) Obtaining suspect information and the issuance of a "B.O.L.O". 6) Locating and identifying all witnesses. 8) Preparing the appropriate reports. 9) Conducting an area canvass. 10) Apprehending and arresting criminal offenders*'.

<u>Departmental Order 11, Chapter 1.3.4.1</u> states, '*Back-up officers assigned to a call for service or who respond to a call for service will assist the primary officer in carrying out all of the responsibilities outlined in this chapter.*' It is The Plaintiffs understanding that the first officer on 'the scene' is in charge, unless a superior officer is present (The Plaintiff refers to The First Officer as 'The Primary Officer'). Defendants Philippe and Lewis through lack of supervision, switched who was 'the primary' Officer on the scene. This 'switch' effected The Plaintiffs Internal Affairs Investigation because The Plaintiff could not remember the names of Defendants Philippe and

---

[1] Identified as 'The Male' throughout This Complaint.

[2] Defendant Philippe plays a vital role here. He is translating 'The Material Testimony' that Defendant Lewis would write into his Arrest Affidavit.

[3] Here The Arresting Officer (Defendant Lewis) did not conduct, or have The Information from The Preliminary Investigation conducted by Defendant Philippe.

Lewis when he reported his complaint to Defendant 'City' Internal Affairs. As a result, Defendant Lewis was identified as the primary officer when in fact Defendant Philippe was the first officer on the scene. Defendant Lewis did not arrive for quite some time later (supra ¶9). Defendant Lewis was now held responsible for not responding to This Plaintiffs requests to have a report taken concerning his broken cell phone. Defendant Philippe who The Plaintiff flagged down (plaintiff EXHIBIT 52: Internal Affairs Statement of Officer W. Philippe at 3:55), heard The Plaintiffs full story of events, and also remembered This Plaintiff requesting a report be made concerning his cellular phone (plaintiff EXHIBIT 52: Internal Affairs Statement of Officer W. Philippe at 8:18). As explained supra at ¶ nine (9), '*The First Officer (Defendant Phillipe) spoke with The Second Officer (Defendant Lewis) outside of hearing of The Plaintiff, returned to The Plaintiff, handcuffed The Plaintiff despite The Plaintiffs protest to being handcuffed, and put The Plaintiff into the back of his marked City Patrol Vehicle which The Plaintiff also protested.*' The Plaintiff believes that switches such as this are problematic for these reasons at bar, 1.) The Plaintiff identified an unknown Officer to Internal Affairs; and that officer was incorrectly identified because of 'the switch'.   2.) The Information relayed on the scene became confused. Plaintiff assumes that competent policing assigns 'primary' officers to scenes, in part, so that The Second Officer on The Scene, doesn't dictate terms, when she/he may have missed relevant details (such as at bar). Here Officer Philippe should have been primary. Plaintiff EXHIBIT 52: Internal Affairs Statement of Officer W. Philippe at 8:19 Defendant Philippe states, '*I do remember the suspect mention something about the damaged cell phone*'. Plaintiff EXHIBIT 50: Internal Affairs Statement of Officer Kenneth Lewis at 4:40 – 5:16, Defendant Lewis is asked, '*When you arrived how did you assist on the call?*' Defendant Lewis responded by repeating the question. Then he states, '*When I got to the call, I made contact, well, I saw the suspect first!*' The Internal Affairs Investigator repeated the question again, and Defendant Lewis answered '*yeah*'. The Plaintiff shows here, Defendant Lewis didn't know of The Plaintiffs cell phone complaint because he was not 'primary' (plaintiff EXHIBIT 50: Internal Affairs Statement of Officer Kenneth Lewis at 8:00 – 8:30). The Triers of Fact can also infer that Defendant Lewis didn't know that The Plaintiff 'waved' them down, because he was not primary (first on scene) and this 'switch' altered Defendant 'City' Internal Affairs Investigation (plaintiff EXHIBIT 52: Internal Affairs Statement of Officer W. Philippe at 3:53). Plaintiff complains Defendant 'City' lack of supervision, is ever increasing poor dynamic, with regard to Defendants Philippe and Lewis' actions at bar.

**Evidence**:

23.    In Plaintiff EXHIBIT 03: Arrest Affidavit (page 2of 2), there is this 'note': '*video surveillance camera from the lobby captured the incident.*' This is an affirmative statement attached to a 'sworn' Arrest Affidavit. Plaintiff EXHIBITS 41, 51, 61, and 71 capture all of the material video surveillance evidence at bar, related to the single charge applied to This Plaintiff by Defendants Philippe and Lewis of 'Attempted Aggravated Assault with a Deadly Weapon' (felony). This Plaintiff complains that the only 'lobby' video that exists, though has never been seen, would only show Ghislain Fourqueler (The Male) procuring bottles and glasses to exit DTGH 'lobby' and throw at the retreating Plaintiff (Plaintiff EXHIBIT 51: Hotel Entrance Surveillance Video at 16:45:47 and 16:45:48). This Plaintiff credits a substantive lack of supervision of Defendant(s) Philippe and Lewis, who identify here, a surveillance video that does not exist, to procure probable cause to arrest This Plaintiff on said felony charge supra. Defendant 'City's Police Departmental Order 11, Chapter 16.4.29: '*All reports concerning an arrest, must be reviewed by a supervisor. The supervisor must ensure the reports are thoroughly completed and*

*contain the proper elements.'* Plaintiff complains that where there is, not, a reckless disregard to appropriate supervision, and validated disregard for Departmental Policy, material evidence such as said 'lobby' video would have first been viewed by subordinates of appropriately supervised Officers, then, procured for evidence of probable cause for prosecution. The Plaintiff complains that in light of the conflicting tale of events between The Plaintiff, and alleged Female victim, it was incompetent, and an indicator of reckless disregard by Supervisors, that these veteran Officers failed to view and procure the material evidence of said 'video', while The Plaintiff was illegally detained (plaintiff <u>EXHIBIT 50: Internal Affairs Statement of Officer Kenneth Lewis at 6:39</u>). The Plaintiff affirms here, that Finders of Fact can find in the material evidence at bar, that these omissions originate from a reckless disregard to Departmental Policy which requires a supervisor to '*ensure the reports are thoroughly completed and contain the proper elements'*. Plaintiff complains that prudent supervision of Defendant(s) Lewis and Philippe would restrain Officers from glaring mistakes while on independent patrol. Plaintiff <u>EXHIBIT 03: Arrest Affidavit</u> states, '*defendant became very aggressive, then he pulled up his shirt to expose the knife that he had in his pants and defendant stated that he was going to kill her'*. This Plaintiff never had on a shirt. This statement made by The Female could have been proven false by simply viewing plaintiff <u>EXHIBIT 41: Security Camera Plaintiffs Approach at 16:44:24</u>, or said 'lobby' video referred to by Defendant Lewis in his Sworn Arrest Affidavit. The Plaintiff believes that appropriate supervision would have prevented or corrected such an egregious error, thus decreasing the extended injury to Plaintiffs person. Plaintiff complains Defendant 'City' lack of supervision, is ever increasing poor dynamic, with regard to Defendants Philippe and Lewis' actions at bar.

**Identification**:
24.    Plaintiff <u>EXHIBIT 16: Ghislain Fourqueler Arrest Record</u> shows the arrest record of the sole witness Ghislain Fourqueler who's last name is correctly spelled 'Fourquier' (Defendant 'City' Internal Affairs spelled it incorrectly while inserting it into Internal Affairs documentations such as Plaintiff <u>EXHIBIT 10: Inter-Office Memorandum 9-10-18</u>). Defendant Lewis incorrectly identified Ghislain Fourquier as a Citizen from France. This Plaintiff complains that appropriate supervision/training would have allowed Defendant Lewis and Philippe to identify that Mr. Fourquier was not visiting from France, but is actually a resident of Miami-Dade County with previous charges that include assault/battery. Again, Defendant 'City' Police <u>Departmental Order 11 Chapter 16.4.29</u> states, '*All reports concerning an arrest, must be reviewed by a supervisor. The supervisor must ensure the reports are thoroughly completed and contain the proper elements.'*[1] Plaintiff identified The Male as his assaulter, ironically The Male has been previously arrested for assault. Plaintiff questions if a thoroughly completed report, is one that erroneously notes incorrect routine information such as last names, countries of origin, and previous departmental criminal records concerning citizens. Plaintiff complains Defendant 'City' lack of supervision, validates poor dynamic, with regard to Defendants Philippe and Lewis and Departmental Policy.

**Classifications**:
25.    Plaintiff at bar complains that appropriate supervision would have allowed Defendant(s) Philippe and Lewis to separate the classifications correctly between a 'witness' and an accused 'assaulter'. At bar, Defendants Lewis and Philippe regarded The Male as a witness (plaintiff <u>EXHIBIT 52: Internal Affairs Statement of Officer W. Philippe at 4:09-5:03</u>). Defendants Philippe and Lewis not only identified The Male as a 'witness', but the 'sole witness.' This is after The

---

[1] See also Departmental Order 11, Chapter 8.3 in paragraph 11 supra.

Plaintiff identified The Male as his assaulter. The Plaintiff was the initial contact with Defendant(s) Lewis and Philippe when they arrived on the scene (plaintiff <u>EXHIBIT 52: Internal Affairs Statement of Officer W. Philippe at 2:35</u> and plaintiff <u>EXHIBIT 50: Internal Affairs Statement of Officer Kenneth Lewis at 5:07</u>). Plaintiff complains Defendant 'City' lack of supervision, validated Defendants Philippe and Lewis to disregard Plaintiffs (Citizens) Rights.

**Witnesses**:

26.     The Plaintiff complains that there are no other witnesses identified by Defendant(s) Philippe and Lewis other than those individuals who were actually involved in the confrontation[1]. At the time of Defendant Philippe's arrival, The Plaintiff was standing with DTGH Security Member mentioned in paragraph 8 supra. This DTGH Security Member assisted Defendants Philippe and Lewis into DTGH to find The Male and Female. This DTGH Security Member also informed Defendants Lewis and Philippe of the 'lobby' video mention in Defendant Lewis's sworn arrest affidavit. This DTGH Security Member was not identified as a witness, and is not mentioned in any of Defendant 'City' Police Officer Kenneth Lewis's documentation regarding Plaintiffs arrest. The Plaintiff suggests The Triers of Fact can infer deliberate indifference from many levels of supervision within Defendant 'City' Police Department. To use the sole statement of Ghislain Fourqueler (the male) to indict This Plaintiff was erroneous when taken as a whole regarding to the circumstances; especially, at bar where there were a multitude of other witnesses who Defendants Philippe and Lewis could have interviewed but did not. There is no record of Defendants Lewis and Philippe contact with any of the other witness besides The Male and The Female[2]. Defendants Philippe and Lewis did not interview DTGH Security/Staff who made one of the many calls to 911. The Plaintiff complains this irrational decision not to interview DTGH Security/Staff comes from lack of Corrective Supervision, thus, validating this performance against Departmental Policy. Defendant 'City' Police <u>Departmental Order 11, Chapter 16.4.29</u>: '*All reports concerning an arrest, must be reviewed by a supervisor. The supervisor must ensure the reports are thoroughly completed and contain the proper elements*'. Here, The Triers of Fact can infer, that such an erroneous decision to only interview participants of a confrontation, where there are a multitude of witnesses, is an egregious manifestation of lack of supervision. Further supervisors should have identified Defendant 'City' Police <u>Departmental Order 11, Chapter 1.7: Field Interviews</u>, which states, '*Officers must be able to articulate facts to support the detention under guidelines for a legal stop and frisk and must not act on the basis of a hunch.*' Here The Triers of Fact can infer Defendants Lewis and Philippe acted on a 'hunch' instead of The Material Physical Evidence. The Plaintiff complains that his Liberty was illegally taken from him by Defendant Lewis, when un-Constitutionally arrested supra paragraphs 6-9, because of Defendant 'City' lack of supervision.

27.     '*Both Federal and Florida state law hold that 'probable cause' exists when an arrest is reasonable under the totality of circumstances,*' (<u>Owaki v. Miami 491 F.Supp 2d 1140 [1]</u>). The Material Evidence at bar supra, proves that under the totality of circumstances, Defendant 'City' Officer Philippe and Lewis could not have found probable cause for the arresting charge indicted upon Plaintiff, thereby making void The Standard for arguable probable cause, '*importantly, in evaluating probable cause, an officer may not unreasonably disregard certain pieces of evidence by choosing to ignore information that has been offered to him or her, or, electing not to obtain easily discoverable facts that might tend to exculpate a suspect*', (<u>Kingsland v. Miami 382 F.3d</u>

---

[1]This violates <u>Departmental Order 11, Chapter 1.3.4</u> (see paragraph 22).
[2]The Female apparently spoke French. Defendants Philippe and Lewis received translation from The Male.

1220, 1229, 1233). *'Under Federal law and Florida state law the totality of circumstances standard required to determine existence of probable cause for arrest is met when the facts and circumstances within the officers knowledge of which he or she has reasonable trustworthy information would cause a prudent person to believe under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense'*, (Owaki v. Miami 491 F.Supp 2d 1140 [2]). At bar, *'no reasonable officer with the information that was readily available to [defendant] at the time he arrested [p]laintiff could have believed that he had probable cause to arrest'*, (Carter v. Butts 821 F.3d 1310, 1321). At bar a simple review of the surveillance video mentioned in Defendant Lewis Arrest Affidavit (plaintiff EXHIBIT 03), which was readily available, would have been prudent against, The Plaintiffs and alleged victims differing testimonies. Plaintiff seeks damages for his loss of time, loss of Liberty (*'The security of ones privacy against arbitrary intrusion by the police is implicit in the concept of ordered liberty, and as such enforceable against the States through The Due Process Clause'*, (Elkins v. US 4 L ed 2d 1670 at (2.)). Infra at paragraph 95 Plaintiff shows how Defendants Philippe and Lewis falsely arrests Plaintiff by falsifying material evidence. Plaintiff insists Defendants Philippe and Lewis knew their conduct would be validated.

### Plaintiffs Statement of Injuries:

28.      Initial injury was imposed upon Plaintiff with his illegal handcuffed detainment (¶ 9). Defendant 'City' of Miami Police Departmental Order 1 Chapter 2.4.1 states, *'Our mission, together with the communities of Miami, is to make our City a place where all people can live, work, and visit safely without fear.'* Defendant 'City', Philippe, and Lewis, have combined to purposefully inject The Plaintiff, a part of The Community of The City of Miami, with a sense of fear. Supra at paragraph 8, The Plaintiff waited with DTGH Security/Staff for Miami Law Enforcement to arrive so that he could report he'd been assaulted, and his property damaged, only to be treated thoroughly as a criminal. The Plaintiffs eventual arrest, after detainment, solidified The Plaintiffs fear of Defendant 'City's' ability to arbitrarily strip him of his Liberty, thus, instilling an enduring fear upon The Plaintiff he prays will heal. Plaintiff has found an increased difficulty finding a way to enjoy life, and protect himself. Plaintiff now has difficulty being at peace with the his life, and how to believe that Liberty is protected by The United States Constitution. The plaintiff suffered significant injury when Defendant Lewis falsely charged him with 'attempted aggravated assault/deadly weapon' (F.S. 784.021(1)(A)) which was the proximate cause of The Plaintiffs denial of bail and/or release at his preliminary hearing, thus causing continued injury upon The plaintiffs person, mentality, and Liberty. The Plaintiff had already endured two strip searches per Miami-Dade Corrections Policy due to his false arrest by the time he went to said preliminary hearing. Plaintiff endured four more strip searches prior to his release from jail (Florida State Statute 901.211 (2)(b), Miami-Dade County Corrections and Rehabilitation's Departmental Standard Operating Procedure Number 11-022 IV PROCEDURES (E) states, *'Inmates charged with weapons violations, violent crimes, or possession of controlled substances will be strip searched during the intake process. Inmates may also be searched under the following conditions: after the completion of a contact visit (including attorney visits)'*. Plaintiff had at least one attorney visit. Plaintiff was also strip searched after every court appearance. Plaintiff appeared in Court 3 times. Plaintiff was also striped when Miami-Dade Department of Corrections changed his housing placement from one facility to another. Plaintiff

endured 5 humiliating strip searches during his illegal incarceration. Plaintiff seeks the maximum monetary damages for this humiliation that has been severely demeaning. Defendant 'City' Police Departmental Order 1, Chapter 11.3 states, *'The prime functions of The Police Department are the prevention and detection of crime, the apprehension of offenders, the protection of person and property under The laws of The State and The Ordinances of The City, and the performance of a multitude of tasks relating to public welfare and safety.'* At bar, Defendant 'City' has failed to ensure Defendant Phillippe and Lewis can detect crime per said Defendant 'City' Police Departmental Policy, even while in possession of easily articulable material evidence, thus causing Plaintiff humiliation, loss of time, agony to fight for his un-imprisonment. Defendant 'City' has failed to supervise Defendants Phillippe and Lewis in the apprehension of criminals, instead, Defendant 'City' has validated Defendants Philippe and Lewis' malicious apprehension of victims such as The Plaintiff, causing injury to Plaintiffs person through seizure (detainment), arbitrary denial of Liberty, and false arrest. Plaintiff suffered the emotional toil of expressing his innocence in vain, first to Defendants Philippe and Lewis; Then to a Court of Law that believed the false affidavit of Defendant Lewis when it (The Court) denied Plaintiff release or reduced bail at his preliminary hearing regarding the charges against him by Defendant Lewis. Plaintiff seeks to be compensated in an attempt to be made whole from the damage inflicted arbitrarily upon him by Defendant 'City', from its refusal to protect his Civil Rights from denial by its Officers. Plaintiff seeks compensation from Defendant 'City' for its failure to ensure Defendants Philippe and Lewis follow said Defendant 'City' Departmental Policies supra, Defendants Philippe and Lewis failed to protect Plaintiffs person and property. These actions were validated by Defendant 'City' through Defendant 'City' refusal to ensure supervisors hold officers Philippe and Lewis responsible for violations of Departmental Policy and United States Constitutional Rights granted Citizens.

29.    Plaintiff seeks compensatory damages for said emotional distress, *'such harm can be inferred from the circumstances as well as established by the testimony'*, (Seaton v. Sky 491 F.2d 634, 636). The arbitrary denial of Liberty, leading to illegal detainment and false arrest, *'in the eyes of the law [this] right is so valuable that damages are presumed from the wrongful deprivation of it, and the amount of damages is a question peculiarly appropriate for the determination of the jury because each member of the jury has personal knowledge of the value of that right'*, (Basista v. Weir 340 F.2d 74). Defendant 'City' harmed This Plaintiff in its failure to supervise Defendant(s) Philippe and Lewis. *'The Fourteenth Amendment prohibits a State from depriving any person of liberty without due process of law, and from denying to any person within it's jurisdiction the equal protection of the laws'* (U.S. v. Cruikshank 23 LAW ED pg. 588 at (8.)).

30.    As stated supra ¶8, Plaintiff waited for Defendant 'City' Police to arrive to report damage to his cellular phone. Plaintiff was handcuffed and detained before Defendant 'City' officers even spoke with The alleged Victim. Plaintiff was then arrested despite the material evidence. The emotional distress gained momentum through each of these steps (handcuffing, detainment, arrest, loss of liberty). First officers ignored Plaintiffs report concerning his cell phone. Plaintiff believes officers didn't even question The Male, Female, bystanders, or DTGH Security/Staff regarding his cell phone. This disregard for The Plaintiffs property goes against Defendant 'City' Police Departmental Policy (supra ¶28 Departmental Order 1, Chapter 11.3) which states protection of property is a Prime Function of The Miami Police. Plaintiff endured multiple levels of humiliation, Plaintiff handcuffed arbitrarily, though Plaintiff posed no threat, and, committed no crime. Plaintiff was plainly aware of bystanders watching him submit to being handcuffed for observing his ability

to report property damage to The Miami Police Department, this humiliation has endured to become a feeling that worthlessness best describes him, according to Defendant 'City' and its Police Department, Plaintiff now finds it severely distressing to face reality knowing his Liberty is not considered valid by Defendant 'City', and its Police Department. Plaintiff differentiates his handcuffing and detainment, as distinct types of distress. Plaintiff, then arrested Plaintiff causing his prolonged incarceration which contained its stresses upon The Plaintiff daily; through Plaintiff attempts to contact his attorney, desperate to project his innocence. Plaintiff lost time with his family. Plaintiff lost job opportunities. Plaintiff equates this loss of Liberty to early Black Africans who were captured by Europeans as slaves, no questions just arbitrary guilt. Plaintiff makes this comparison because to lose freedom so arbitrarily and easily, is hard to articulate otherwise effectively to demonstrate the great extent of mental emotional injury. Plaintiff felt an intense agony from this incarceration, as would be expected as if waking up from a dream, in a real cell, not able to leave, wondering why your there. Plaintiff seeks monetary damages for this distress, humiliation, agony, and loss of time from incarceration, and, the time it took to write complaint at bar. Defendant 'City' deliberate indifference to the Supervision of its Police Department causing injury upon Plaintiff and Plaintiff seeks monetary compensation in attempt to be made whole again from this humiliation, '*humiliation can be inferred from the circumstances*', (Seaton v. Sky 491 F.2d 634, 636). To date The Plaintiffs criminal record still reflects the malicious charge of Assault with a Deadly Weapon, this, committing The Plaintiff to this defamation indefinitely. Plaintiff seeks compensation for past, present, and future humiliation with regards to this intentional and gross misconduct (¶61).

31.     Plaintiff seeks compensation for his injuries including loss of time he sustained as a result of the false arrest. Plaintiff spent weeks in Dade-County Jail because of his denial of Liberty. '*Liberty means more than freedom from bodily restraint*', (Meyer v. Nebraska 262 U.S 390). The Plaintiff endured injury from his loss of his Right to '*engage in and generally enjoy those privileges long recognized as essential*', (Meyer v. Nebraska 262 U.S 390) such as the ability to report crime. Plaintiff undue loss of Liberty, to be confined to a jail unlawfully is unfathomable in Our Great Civilized Society. Plaintiff lost his Liberty by seeking Miami Police Department support, regarding the destruction of his cell phone; Plaintiff seeks monetary damages in an attempt to make him whole again, '*Indeed the Citizens of a free society can conceive of no greater injury than the continued unjust deprivation of Liberty*', (Rowell v. Holt 850 So.2d 480 at [4]). Plaintiff seeks to be compensated for his prolonged incarceration due to Defendant 'City' disregard to known causes leading to deprivations of Citizens Rights, such as Plaintiff at bar. At any time Defendant 'City' Police Department Supervisors could have reviewed The Arrest Reports as required be Defendant 'City' Police Departmental Orders (¶12,13). Review would have found that The Material Evidence did not support The Arrest of The Plaintiff. As a direct result of this lack of Supervision, Plaintiff injury of confinement was lengthened, causing Plaintiff continued loss of (time) Liberty through confinement, away from family (children) and loved ones, '*such harm can be inferred from the circumstances as well as established by the testimony*', (Seaton v. Sky 491 F.2d 634). Plaintiff insists emotional injury was created from this Loss of Time, and injury created from The Loss of Time it took to write Complaint at bar, which caused Plaintiff continued isolation from his family and loved ones, as it took over two years for Plaintiff to write Complaint at bar, as Plaintiff could not afford an attorney; Though Plaintiff is not an attorney, The Civil Rights Attorneys Fee Awards Act of 1976 (42 U.S.C.A § 1988 [b] allow for The Award of Reasonable Attorney's Fees to the prevailing party in cases brought under Civil Rights Laws including Section

1983, and, applies whether or not Compensatory Damages were awarded, or whether or not Plaintiff prevails. Though Plaintiff is not an attorney, where his rights have been violated such as at bar, and proven by The Material Facts, causing Plaintiff loss of years to research and write, and gather material evidence, Plaintiff seeks compensation for the distress sustained from This Loss of Time trying to find a sense of Liberty regained by writing complaint at bar; without which Defendant 'City' validation, of it un-Constitutional actions towards Citizens, through its Police Department would go unrecognized[1].

32.    Plaintiff seeks compensatory damages for said inflictions of intentional emotional distress. These injuries of distress have caused severe life-long emotional injuries upon The Plaintiff. The Plaintiff will never enjoy life the same again as a result of Defendant 'City' Police Officers as identified supra. Because '*the impact rule does not apply to recognized intentional torts that result in predominantly emotional damages including intentional infliction of emotional distress', (Rowell v. Holt 850 So.2d 475 (2.))* Plaintiff seeks just compensation. *In the State of Florida 'elements of claim for intentional infliction of emotional distress. 1) extreme and outrageous conduct, 2) an intent to cause or reckless disregard to the probability of causing emotional distress, 3) severe emotional distress suffered by plaintiff, 4) proof conduct caused the emotional distress', (Gonzalez v. US 231 F.Supp.2d 1199 [15]).*

---

[1]Creating an issue of 'great public concern'.

**STATEMENT OF MATERIAL ISSUES OF FACT; causing, THIS ACTION for DAMAGES; as RELATED TO DOUBLE TREE GRAND HOTEL (DTGH) for negligence.**

33.    JURISDICTION RELATED TO STATE CHARGE; NEGLIGENCE:
Article III of The United States Constitution 28 U.S.C. §1367 Supplemental Jurisdiction; gives this Federal Court Jurisdiction of all claims at bar.

34.    It is undisputed that the four Causes of Action for Negligence are 1) Defendant owed Legal duty to use due care, 2) Defendant breached That Duty, 3) Defendants breach of That Duty was proximate cause of injury to Plaintiff, and 4) Plaintiff suffered damages caused by That Breach. The Plaintiff complains that DTGH Security/Staff failed to exercise a degree of reasonable care expected in order to minimize the risk of harm to his person. *'Gross negligence is that course of conduct which a reasonable and prudent man would know would probably and most likely result in injury to persons or property...if the course of conduct is such that the likelihood of injury to other persons or property is known by the actor to be imminent or 'clear and present' that negligence is gross'*, (Carraway v. Revell 116 So.2d 22-23).

35.    First, Plaintiff complains that it was negligent for DTGH Security/Staff to allow The Male to continually attack The Plaintiff without interruption while running in, out, and, around their Hotel (supra ¶6, 7, 8). Second, Plaintiff complains it was negligent for DTGH Security/Staff to withhold prominent material testimony from Law Enforcement, after calling said Law Enforcement (supra ¶7), knowing that withholding this material testimony would lead to injury upon The Plaintiffs person (arrest). Plaintiff complains that his injuries of detainment, and arrest were created by Defendant DTGH Security/Staff gross negligence, in that they did not transmit the material testimony to Defendants Philippe and Lewis, of The Males¹ continuous attack upon The Plaintiff, and that the only time The Plaintiff procured his fishing knife was to deter The Males attack. This withholding of material testimony can be inferred to causing The detainment and arrest of The Plaintiff. Plaintiff wasn't detained until after Defendant 'City' Officer Kenneth Lewis spoke to DTGH Security/Staff (supra ¶9).

36.    As described supra in paragraph 6: *'The Plaintiff while walking to dinner encountered a heavily occupied side-walk in front of The Double Tree Grand Hotel (DTGH) located at 1717 North Bayshore Drive in Miami, Florida on or about February 13, 2018, at or around 4:30pm. The Plaintiff decided to avoid the crowded sidewalk by using The Hotel driveway which is parallel to said side walk (EXHIBIT 41: Security Camera Plaintiffs Approach at 16:44:24)'*. DTGH Security/Staff is aware that passersby often use their driveway when the sidewalk is congested or otherwise obstructed, usually by DTGH traffic².

37.    Plaintiff EXHIBIT 51: Hotel Entrance Surveillance Video at 16:44:58 shows the definitive moment DTGH Security/Staff became aware of the situation causing this action at bar. At this exact moment in plaintiff EXHIBIT 41: Security Camera Plaintiff Approach at 16:44:58 DTGH Security/Staff witness The Plaintiff being chased off their property and across the street by The Male. Here, DTGH Security/Staff did not see The Plaintiffs fishing knife because it was still in The Plaintiffs bag (plaintiff EXHIBIT 41: Security Camera Plaintiff Approach at 16:44:55).

¹Ghislain Fourquier is referred to as 'The Male' throughout This Complaint.
²By traffic Plaintiff is referring to the various obstructions to the sidewalk emanating from DTGH such as taxis, bus coaches, pools of people, etc.

38.     The Plaintiff after running away from The Male across the street, was able to retrieve his fishing knife, and deter The Male. The Male then ran hostilely past DTGH Security/Staff into DTGH without interruption (plaintiff EXHIBIT 51: Hotel Entrance Surveillance Video at 16:45:30). The Plaintiff complains this was grossly negligent because DTGH owed him and their guests a duty of ordinary care to attempt to deter The Male from 'a building anger'[o1]. At this moment The Plaintiff began to walk away from DTGH heading north (supra ¶6). As The Plaintiff walked away north, you can see bystanders gathering north, watching as The Plaintiff put away his fishing knife (plaintiff EXHIBIT 61: Side Camera at 16:45:30). As the Plaintiff proceeded to leave north, away from DTGH. DTGH Security/Staff watched The Male run out of DTGH past them without interruption, to chase The Plaintiff (plaintiff EXHIBIT 51: Hotel Entrance Surveillance Video at 16:45:45) with glasses and bottles in each hand. The Male emptied the contents of those glasses and bottles directly in front of DTGH Security/Staff without interference (plaintiff EXHIBIT 51: Hotel Entrance Surveillance Video at 16:45:48). DTGH Security/Staff made no attempt to deter The Male and The Plaintiff complains that this was grossly negligent, and, a dereliction of ordinary care. The Male then threw the contents of his hands at the Plaintiff, as The Plaintiff dodged the items. The Plaintiff withdrew his fishing knife again to deter The Male, and The Male created enough space to allow The Plaintiff to attempt leaving DTGH again (plaintiff EXHIBIT 61: Side Camera at 16:46:07). As the Plaintiff attempted to leave north, The Male, re-started chasing The Plaintiff. DTGH Security/Staff again made zero attempt to deter The Male (plaintiff EXHIBIT 61: Side Camera at 16:46:28). The Plaintiff complains this was grossly negligent, and a dereliction of ordinary care. The Male ran until he caught up with The Plaintiff, startling The Plaintiff, causing The Plaintiff to drop his cellular phone. The Male picked up The Plaintiffs phone, smashed it into the ground, and returned into DTGH, past DTGH Security/Staff, again, without interruption (plaintiff EXHIBIT 51: Hotel Entrance Surveillance Video at 16:47:58). The Plaintiff complains that Defendant DTGH Security/Staff acted with gross negligence in watching as The Male re-enter their Hotel without interruption, after, having consistently attacked The Plaintiff. The Plaintiff suggests A Trier of Fact can infer that DTGH never attempted to deter The Male, even off camera[1], then called Law Enforcement, and were grossly negligent in relaying Material testimony to said Law Enforcement[2]. Here The Plaintiff has provided material evidence that shows DTGH had a *'reckless indifference to the rights of (The Plaintiff) which is equivalent to an intentional violation (of his rights)'*, (Carraway v. Revell 116 So.2d 16).

39.     Plaintiff complains that DTGH caused injury to his person by calling Miami Law Enforcement and withholding Ordinary Care Responsibility of relaying the truthful material testimony and physical evidence (to Defendant(s) Philippe and Lewis), thus showing gross negligence, which lead to The Plaintiffs detainment and arrest. Defendant Lewis in his sworn Arrest Affidavit (plaintiff EXHIBIT 03: Arrest Affidavit) describes that '*video surveillance camera from the lobby captured the incident*'. This referenced surveillance video was provided to Miami Law Enforcement (Defendants Philippe and Lewis) by DTGH Security/Staff. Plaintiff never assaulted anyone, thus, Plaintiff complains DTGH negligently relayed/provided The Material surveillance video evidence, in addition to, their eyewitness testimony.

40.     Plaintiff complains that after calling Miami Law Enforcement, DTGH Security Staff owed The Plaintiff a duty of ordinary care in relaying truthful material testimony and evidence. Plaintiff complains that it is unfathomable, that DTGH Security/Staff could have possibly

---

[o1] see Infra ¶ 41

[1] The Male successfully procured bottles and glasses from within DTGH to throw at The Plaintiff (supra ¶ 38)

[2] DTGH Security Staff procured the 'surveillance video' mentioned in Arrest Affidavit (plaintiff EXHIBIT 03) used for probable cause to arrest Plaintiff.

relayed the correct material information by testimony, or by physical evidence, without gross negligence, because, that material evidence, and testimony lead to The Plaintiffs arrest for a felony, *'jury must determine what is or what is not negligence'*, (Stirling v. Sapp 229 So.2d 850@(6.)).

41.    *'Elements which constitute actionable negligence are existence of duty on part of defendant to protect plaintiff from injury, failure of defendant to perform duty, and injury to plaintiff resulting from such failure'*, (Peeler v Independent Life 206 So.2d 34). The Plaintiff rejects the idea that staff on a property, do not have a reasonable moral duty, to relay true testimony and physical evidence to Law Enforcement. Plaintiff insists Defendant DTGH did not take reasonable steps to deter, minimize, and or, stop The Male from an escalating violence. This failure of action, or ordinary care, caused injury to Plaintiff person by way of damage to his property, detainment and arrest.

42.    The Plaintiff insists The Material Evidence he has presented, show an entire course of conduct, that under all of the circumstances, and in the light of all of the related factors taken collectively, establish the existence of gross negligence. Thus pointing to the conclusion, that DTGH knew, or should have known, that their conduct in totality, placed The Plaintiff in danger, and, lead to his detainment and arrest. Under all of the circumstances, DTGH could be found guilty of a conscious indifference, or grossly careless disregard to The Rights of The Plaintiff, *'In negligence action, it is necessary to determine whether harm that occurred was within scope of danger created by defendant's negligent conduct, i.e., the type of harm has so frequently resulted from same type of negligence that in field of human experience same type of result may be expected again'*, (M.C.J v. State 444 So.2d 1001).

43.    Federal precedent implicates that Civil Negligence claims are decided by a preponderance of the evidence, and, *'In Federal Court, it is beyond questioning that disputed issues of fact are to be decided by the jury'*, (Sturdivant v. Target 464 F.Supp.2d 596). Plaintiff requests a Jury Trial.

44.    The Plaintiff complains that DTGH was the legal cause for his injury of seizure (detainment) of his person, and eventual arrest, and, that due care could have prevented his injuries. Plaintiff was detained after Defendant Philippe speaks with DTGH Security member supra ¶ 9. Plaintiff was then arrested. The negligence of The Defendant DTGH is directly a legal cause of the injuries complained of by The Plaintiff. The Plaintiff complains that The Defendant's actions were so far beyond society's definition of what constitutes reasonable behavior, that The Defendant's behavior is negligent on its face. The Plaintiff complains Double Tree Grand Hotel owed a duty of ordinary care to The Plaintiff. *'Acts that might be considered prudent in one case might be negligent in another; negligence is relative term and its existence must depend in each case upon particular circumstances which surrounded parties at time and place of events upon which controversy is based'* (Spivey v. Battaglia 258 So.2d 815) and questions of fact are to be decided by Triers of Fact, *'a Federal Court is not to weigh evidence'*, (Sturdivant v. Target 464 F.Supp.2d 597@(8.)).

45.    DTGH Security/Staff had been negligent in its active conduct. The Plaintiff acknowledges that The Finders of Fact will find active negligence based on The Material

Evidence presented at bar. '*Active negligence not related to the premises*' (Hix v. Billen 284 So. 2d 209) presenting a Question for The Jury as to why DTGH staff allowed The Male and Female to attack The Plaintiff, and why, DTGH relay negligent testimony and material evidence to Miami Law Enforcement. '*In shumake, (we recognize) that status would not bar the plaintiff's claims on the allegations of active negligence*' (Shumake v. Florida 534 So.2d 1178). Plaintiff complains DTGH dereliction of ordinary care caused him to be seized (detained), arrested and maintained in jailed, serious physical and emotional injuries, leading to non-economic injuries of loss of time, emotional anguish, humiliation, reputational damage, and loss of enjoyment of activities such as walking in public places, and being around other people. In attempt to be made whole again from the serious mental gouging caused by Defendant DTGH Security/Staff actions, Plaintiff seeks monetary damages.

Plaintiff seeks compensation

46.     Plaintiff seeks non-economic compensatory damages to make him whole again from the depleting actions of DTGH Security/Staff that were particularly malicious, and reckless upon The Plaintiffs Liberty and Rights, '*the impact rule does not apply to recognized intentional torts that result in predominantly emotional damages including intentional infliction of emotional distress*', (Rowell v. Holt 850 So.2d 475 (2.)). *In the State of Florida 'elements of claim for intentional infliction of emotional distress. 1) extreme and outrageous conduct, 2) an intent to cause or reckless disregard to the probability of causing emotional distress, 3) severe emotional distress suffered by plaintiff, 4) proof conduct caused the emotional distress*', (Gonzalez v. US 231 F.Supp.2d 1199 [15]). DTGH Security/Staff negligent material testimony to Miami Law enforcement, and, DTGH rejecting the ordinary care in attempting to stop, or deter The Male from assault upon The Plaintiff, resulted in Plaintiffs illegal detainment, arrest, prolonged jailing, and loss of Liberty. Plaintiff has presented material evidence for The Finders of Fact to infer DTGH negligence at bar, was done with intent to cause harm upon The Plaintiff. Plaintiff complains this is extreme outrageous conduct which displayed a total disregard for The Plaintiff in any legal facet, including emotionally. Plaintiff was immediately seized (detained) after Miami Law Enforcement spoke with DTGH Security/Staff (¶ 9, ¶ 11), this infers clear negligence on the part of DTGH Security/Staff to prudently relay Material testimony. The material truth at bar is, DTGH Security/Staff never saw The Plaintiff commit assault upon anyone. In addition, failure to even try, to stop The Male from assaulting The Plaintiff. DTGH Security/Staff also procured The Material 'surveillance video' mentioned in plaintiff EXHIBIT 03: Arrest Affidavit. This Material Video had to be provided in a negligent manner because Plaintiff was arrested for assault, and said video was used as probable cause. For said negligence Plaintiff suffered immediate emotional injury, in attempt to narrate the severity of this injury Plaintiff equates it to slavery. Plaintiff was reporting his damage cell phone, was detained in handcuffs for doing so, and arrested due to DTGH Security/Staff negligence. Plaintiff describes slavery as conscious sight of the step by step illegal dealth of his Liberty. For this emotional anguish Plaintiff seeks monetary damages.

48.     The Plaintiff seeks compensation for the humiliation he suffered as a result of the actions of DTGH Security/Staff. Plaintiff endured routine strip searches after his incarceration as a result of DTGH negligence. DTGH Security/Staff had many opportunities to stop or attempt to deter The Male prior to The Plaintiffs cellular phone being broken, which is why The Plaintiff stayed to make a report with Miami Law Enforcement (supra ¶7). The Plaintiff attempted many times to leave during the confrontation with The Male, during this time, DTGH Security/Staff had an

ordinary duty of care to attempt to deter The Male, yet did not. DTGH Security/Staff had an opportunity to give non-negligent material testimony and physical evidence to Miami Law Enforcement which would have deterred Plaintiffs arrest. As a result of this ordinary care failure, Plaintiff was injured by repeated humiliation due to said strip searches while he was arrested for the events at bar. DTGH staff/security did not refrain from causing intentional harm to The Plaintiff resulting in negligence liability under Florida Statute 768.075 (3) (b). Surveillance evidence presents 'fact issue' as to whether DTGH staff/security were negligent in failing to take sufficient precautions to alleviate the growing situation that arose on it's property between The Plaintiff, The Male and The Female. Under law, precedence stands that, issues of fact are to be decided by a jury. Plaintiff complains that as a result of DTGH negligence, he no longer likes to take walks and be around people, this injury as a direct result of the Negligent actions of DTGH Security/Staff. The Plaintiff seeks to be compensated for this gouging of his enjoyment of people and life. We see a direct correlation between DTGH, The Plaintiffs arrest, and his said resulting injuries.

49.     Plaintiff seeks loss of time damages and punitive damages due to DTGH Security/Staff egregious wrongdoing, that was grossly negligent. Plaintiff spent almost 3 years writing complaint at bar. Plaintiff wished to be compensated for this Loss of Time. Punitive Damages, DTGH Security Staff showed extremely reckless disregard for the Rights of The Plaintiff at bar. The Material Evidence at bar also shows that DTGH Security/Staff intentionally caused The Plaintiffs injuries. Florida Statute 768.72 (2) states, *`A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence'*. Florida Statute 768.72 (a) states, *`Intentional Misconduct' means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury'*. Florida Statute 768.72 (b) states, *``Gross negligence' means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct'*. Florida Statute 768.72 (3) states, *`In the case of an employer, principal, corporation, or other legal entity, punitive damages may be imposed for the conduct of an employee or agent only if the conduct of the employee or agent meets the criteria specified in subsection (2) and: (b) The officers, directors, or managers of the employer, principal, corporation, or other legal entity knowingly condoned, ratified, or consented to such conduct'*. Material evidence provided supra herein, show an entire course of conduct, that under all of the circumstances, and in the light of all of the related factors taken collectively, establish the existence of Intentional Infliction of Emotional Distress (supra ¶ 46, ¶42, ¶43).

**STATEMENT OF MATERIAL ISSUES OF FACT; causing, THIS ACTION for DAMAGES; as RELATED TO DOUBLE TREE GRAND HOTEL (DTGH) and OFFICER KENNETH LEWIS[1] and WANDLER PHILIPPE[1] for 42 USCA §1985(3) CONSPIRACY[1].**

50.    '*Elements of a civil conspiracy are: (a) a conspiracy between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts performed pursuant to the conspiracy*', (Florida Fern v. Concerned 616 So.2d 562), (Carpenters v. Scott 77 L Ed 2d 1054), (Evans v. Chichester 533 F.Supp 2d 523). Defendant Philippe and Lewis are required by City of Miami Police Department Policy to articulate facts to support detainment, and arrest. Departmental Order 11, Chapter 1.7 Field Interviews states, '*Officers must be able to articulate facts to support the detention under guidelines for a legal stop and frisk and must not act on the basis of a hunch*'. At bar Plaintiff was immediately detained after Defendant Philippe had a conversation with DTGH Security Member (supra ¶9). Triers of fact can infer that the information DTGH Security/Staff gave to Defendant Phillippe overtly procured The Plaintiffs detainment, this is more material now because we know that there is no Material Evidence that exists to support The Arrest of The Plaintiff at Bar, thus, it can be inferred that the information DTGH Security Staff gave to Defendants Philippe and Lewis was overtly material to The Plaintiffs detainment and eventual Arrest. The 'surveillance video' mentioned supra ¶9, provided to Defendants Phillippe and Lewis by DTGH Security and Staff, was used overtly in a conspiracy to cause damage to The Plaintiffs person by way of false probable cause to arrest The Plaintiff, the articulatable material facts supra at ¶ 37-39, do not lack merit for favor of Plaintiff.

51.    DTGH Security/Staff first witnessed the events at bar seeing The Male in pursuit of The Plaintiff (supra ¶37), (EXHIBIT 51: Hotel Entrance Surveillance Video at 16:44:58). At this exact moment in time can be seen in plaintiff EXHIBIT 41: Security Camera Plaintiffs Approach at 16:44:58 what DTGH Security/Staff are responding to; they are responding to The Plaintiff being chased from DTGH property across the street by The Male. It can be inferred by The Triers of Fact that DTGH Security/Staff first became aware of the events at bar, at this moment, and, at this moment, The Plaintiff is being chased by The Male. At this moment, The Plaintiff had not retrieved his fishing knife, and is retreating (supra ¶6). Here, it can be inferred DTGH Security/Staff first witnessed The Plaintiff being chased. At this moment Triers of Fact can infer, DTGH Security/Staff could/should have identified The Plaintiff as The Non-Aggressor (victim), and The Male as The Aggressor; Plaintiffs material evidence as seen supra ¶6-9, shows that DTGH Security Staff, and Defendants Philippe and Lewis, will not be able to provide articulable material information to support Plaintiffs detainment and arrest on said charge of 'assault with a deadly weapon', thus creating 'overt' action of illegal detainment and false arrest through false testimony and manipulated material evidence in said surveillance video.

52.    DTGH Security/Staff watched as The Male continually attacked The Plaintiff, forcing The Plaintiff to make his fishing knife visible as a deterrent, supra at ¶37-39. As described in paragraph 7, after The Male broke The Plaintiffs cellular phone, and canceled his attack upon The Plaintiff, The Male disappeared into DTGH, and DTGH Security/staff asked The Plaintiff to 'just leave' in response to The Plaintiff insisting on reporting his broken cell phone to Miami Law Enforcement (¶ 7). The Plaintiff refusing to 'just leave', decided to wait to make a police report for his broken phone, because The Plaintiff knew that The Male and Female had retreated into

---

[1]Sued in their 'individual capacity'.

DTGH (plaintiff <u>EXHIBIT 51: Hotel Entrance Surveillance Video at 16:47:59</u>), running past DTGH Security/Staff, who told Plaintiff The Male and Female had left. The Plaintiff waited with DTGH Security peacefully for Miami Law Enforcement to arrive. When Defendant Lewis and Philippe of Miami Law Enforcement arrived, and spoke with DTGH Security/Staff out of the hearing of The Plaintiff, Miami Law Enforcement Officer, Defendant Philippe told The Plaintiff to 'just leave', because The Male and Female had left, this being a carbon copy of what DTGH Security/Staff said to The Plaintiff (supra ¶7). Plaintiff insists that because DTGH Security/Staff knew that The Male and Female assailants had not left, and, because Defendant Lewis handcuffed and detained The Plaintiff immediately after the conversation (supra ¶9) with DTGH Security Member, that DTGH Security/Staff overtly presented 'false material verbal evidence' to Defendant Philippe, that effected The Plaintiffs immediate handcuffing and detainment; we see Defendants Lewis and Philippe play their role in the conspiracy by arresting The Plaintiff against the material evidence.

53.     Plaintiff complains that DTGH Security/Staff in order *'to obstruct course of justice'* (<u>Sykes v. State of Cal 497 F.2d 197 (1974)</u>) decided to discriminate against The Plaintiff resulting in mental injury to Plaintiff by illegally seizing his Person, denying The Plaintiff of Equal Protection of Law (¶99), and preventing him from exercising his Constitutional Right to Due Process of Law (making a police report concerning his broken cell phone) under The Fourteenth Amendment. At all times Defendant(s) Lewis and Philippe, in full City of Miami uniform, were acting under The Authority of The Color of The Law; The Plaintiff insists that The Triers of Fact will determine or infer, that Defendant(s) Lewis, Philippe, and DTGH Security/Staff obstructed The Course of Justice (due process) with intent to discriminate against The Plaintiff (Equal Protection), because he wanted to report his broken cell phone.

54.     <u>42 United States Constitution §1985 (3)</u>: *'In order to recover for conspiracy to deprive plaintiff of civil rights, plaintiff is required to allege that the purpose of the conspiracy was to deprive plaintiff of equal protection, privileges and immunities, or to obstruct course of justice, that defendants intended to discriminate against plaintiff, that defendants acted under color of state law and authority, and that the acts done in furtherance of the conspiracy resulted in an injury to plaintiffs person or property or prevented him from exercising a right or privilege of a United States citizen'*, (<u>Sykes v. State of California 497 F.2d 197</u>). As described supra in paragraph 9, DTGH Security/Staff escorted Defendants Lewis and Philippe into DTGH to procure The Assailants. Defendants Lewis and Philippe returned to The Plaintiff, referred to surveillance video footage (plaintiff <u>EXHIBIT 03: Arrest Affidavit at 'notes'</u>), and told The Plaintiff he was being arrested for 'aggravated assault with a deadly weapon' (<u>Fla Stat 784.021(1)(a)</u>), (supra ¶9). The Plaintiff complains Defendants Kenneth Lewis, Wandler Philippe, and DTGH Security/Staff, maliciously used this material surveillance footage for probable cause to illegally arrest The Plaintiff because he wanted to make a police report concerning his cellular phone (<u>EXHIBIT 50: Internal Affairs Statement of Officer Kenneth Lewis at 7:45</u>). No known security footage support arresting The Plaintiff for the identified charge as seen supra at ¶12, 23. At paragraph 26 supra we see the 'special' relationship between Defendants Lewis, Philippe and DTGH Security/Staff. The Plaintiff was acquitted for said charge, as none of The Defendants presented any material evidence to support said charge. Plaintiff complains this manipulation of material evidence was an overt act in furtherance of their conspiracy to illegally have The Plaintiff arrested for attempting to make a police report

concerning his broken cell phone, thus, denying The Plaintiff The Equal Protection of the Law, in favor of The Male and Female, thus, Obstructing The Course of Justice (Due Process). *'At a minimum, a claim under §1985 must allege a factual basis for the allegation that defendants conspired together'*, (Matthews v. International House of Pancakes, Inc 597 F.Supp.2d 663).

55.    *'conspirators acted with the requisite racial or otherwise class-based invidious discriminatory animus'*, (Sanders v. City and County 226 Fed.Appox. 607, certiorari denied 128 S.Ct. 508/169 L.Ed.2d.368), (plaintiff EXHIBIT 52. Internal Affairs Statement of Officer W. Philippe at 10:12). Plaintiff believes The Triers of Fact can infer, that DTGH Security/Staff, who never having seen This Plaintiff as The Aggressor, in reviewing video surveillance with Defendants Lewis and Philippe, maliciously, cooperatively determined, The Plaintiff as The Offender, denying The Plaintiff the process that was Due. Defendants denied Plaintiff Equal Protection of The Law in part because The Plaintiff insisted on holding The Male responsible for breaking his cellular phone. A simple review of plaintiff EXHIBIT 41: Security Camera Plaintiffs Approach at 16:44:36 will have shown Defendants DTGH, Lewis, and Philippe that The Plaintiff got into a verbal altercation with The Female (plaintiff EXHIBIT: Internal Affairs Statement of Officer Kenneth Lewis at 5:20), attempted to walk away, and was attacked by The Female. Plaintiff EXHIBIT 03: Arrest Affidavit states, *'he pulled up his shirt to expose the knife that he had in his pants'*. Plaintiff clearly did not have on a shirt, did not have a knife in his pants, and did not attempt to physically attack her, The material nature of the 'surveillance video' overtly manipulated by The confederated Defendants, causing injury to The Plaintiff because he wanted to make a report concerning his cellular phone.

56.    Defendants Kenneth Lewis and Wandler Philippe having never previously met The Plaintiff would 'reasonably' have no reason to deny The Plaintiff Due Process and Equal Protection of The Law, except for class based, or other animus (plaintiff EXHIBIT 52: Internal Affairs Statement of Officer W. Philippe at 10:12). The Triers of Fact can infer from The Material Evidence racial or class-based animus. The Plaintiff does not believe Officer Kenneth Lewis, Wandler Philippe and DTGH Security/Staff, complete strangers, would distort the truth, effectuating The Plaintiffs arrest, without racial or class-based animus. Plaintiff EXHIBIT 52: Internal Affairs Statement of Officer W. Philippe at 13:56, Defendant Philippe states, *'(The Male) observed the suspect pulling a knife out'*. Defendant Philippe, after hearing The Plaintiffs version of events (supra at ¶6-8) unreasonably decided it was reasonable to believe The Male assaulter/witness (supra ¶25), which all The Material Evidence provided by DTGH Security/Staff proved false.

57.    *'Ordinarily, there can be no independent tort for conspiracy, but if plaintiff can show some peculiar power of coercion possessed by conspirators by virtue of their combination, which power an individual would not possess, then conspiracy itself becomes an independent motive and coercion through numbers or economic influence'*, (Churruca v. Miami Jai-Alai Inc 353 So.2d 1025). DTGH Security/Staff had an opportunity to materially testify to Defendant(s) Philippe and Lewis that The Plaintiff was never The Aggressor. DTGH Security/Staff also had the opportunity to non-negligently provide surveillance video, and, Defendants Philippe and Lewis, had the opportunity to properly articulate The Material Video Evidence provided by DTGH Security/Staff. It must be remembered, Plaintiff was immediately detained after Defendant Philippe spoke with DTGH Security/Staff (supra ¶9), and both Defendant Philippe

and DTGH Security/Staff asked The Plaintiff to 'just leave' (supra ¶7,9) and not report his broken cell phone. With mutual understanding, and combined confederated actions, Defendants Lewis, Philippe, and DTGH Security/Staff conspired to falsely accuse The Plaintiff of aggravated assault with a deadly weapon to procure his arrest. The Defendants effectively conspired to improperly investigate, falsely accuse, manipulate material evidence, and maliciously prompt the prosecution of The Plaintiff through *'the meeting of minds'*, (Gold v. Patch 686 F.2d 582). The Plaintiff believes that the very nature of The Material Evidence would leave The Triers of Fact to infer that The Plaintiffs false arrest would have unlikely been undertaken without an agreement / meeting of the minds between those identified as Conspirators by The Plaintiff, because 'the totality' of the material evidence does not support the arrest of The Plaintiff. DTGH Security/Staff provided false material testimony and physical evidence, while Defendants Lewis and Philippe used their authority of Law to effectuate The Plaintiffs arrest, knowingly using said false testimony and evidence.

58.    It can also be inferred by The Triers of Fact, that DTGH Security, while speaking to Defendants Philippe and Lewis, together maliciously deduced, that The Plaintiff should 'just leave', because The Plaintiffs issue concerning his cellular phone, was not a plausible priority, *'litigants have a constitutional right to have juries decide issues of fact'*, Howard v. MacDonald 851 A.2d 1142 (2004). Defendants(s) Kenneth Lewis and Wandler Philippe, with malicious intent, agreed with DTGH Security/Staff, to accuse This Plaintiff of Assaulting The Female creating a conspiracy to arrest The Plaintiff for trying to report his broken cellular phone.

59.    The Plaintiff brings this 42 USCA §1985 (3) claim against The Defendants having overcome the 'Intercorporate Conspiracy Doctrine' which holds that acts of corporate agents are attributed to the corporation itself. In case at bar, Defendant City of Miami Officer Kenneth Lewis and Officer Wandler Philippe, who here, are being sued in their individual capacity for conspiracy, and, having conspired with non-municipal persons (DTGH Security/Staff), have acted *'outside'* the protection of The Intercorporate Conspiracy Doctrine, (Denney v. City 247 F.3d 1176).

60.    The Plaintiff brings this 42 USCA §1985 (3) action having defeated any possibility of Defendant Officer Kenneth Lewis and Wandler Philippe claims to absolute or qualified immunity. *'It must be emphasized, however, that all the decisions finding absolute immunity from civil liability assume the presence of authorized official decision-making. A contrary rule would sanction flagrant violations of delegated responsibility in the name of efficiency'* (Belveal v. Bray 253 F.Supp 609 [3]), it is of no mystery that Defendant(s) Kenneth Lewis and Wandler Philippe in case at bar, have acted outside the scope of their authorized official decision-making and duties. Further, The Plaintiff having provided, shown, and spoken of, Material Factual Evidence of Constitutional violations committed against him by The Defendants, were actions were objectively unreasonable, rejects any assertion that Defendants Lewis and Philippe can claim Qualified Immunity, *'These defendants have a qualified privilege, giving them a defense against civil liability for harms caused by acts done by them in good faith in the performance of their official duties as they understood them, but they are liable in damages for any harm which they inflicted intentionally upon the plaintiff,* (Cobb v. City of Malden 202 F.2d 701).

61.     Fla.Stat 768.72 (2) (a): 'intentional misconduct', '*means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury or damage.*'
Fla.Stat 768.72 (2) (b): 'Gross Negligence', '*means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct.*'
Fla.Stat 768.72 (3): In the case of an employer, principal, corporation, or other legal entity, punitive damages may be imposed for the conduct of an employee or agent only if the conduct of the employee or agent meets the criteria specified in subsection (2) and:
Fla.Stat 768.72 (b): The officers, directors, or managers of the employer, principal, corporation, or other legal entity knowingly condoned, ratified, or consented to such conduct;

62.     Plaintiff seeks compensatory and punitive damages. Plaintiff seeks compensatory damages for The Intentionally Infliction of Emotional Distress, anxiety, loss of enjoyment of life, loss of time, and humiliation. Plaintiff seeks punitive damages from DTGH (see ¶61 supra) and Defendants Philippe and Lewis, for their intentional conspiracy that injured Plaintiff causing damage. Plaintiff complains that The Triers of Fact will infer from the material evidence at bar 'intentional misconduct' (supra ¶ 61) to disregard Plaintiffs Humanity, Liberty, and Rights under The Constitution. Plaintiff was humiliated by said Conspiracy. Plaintiff first simply defending himself, was arrested in sight of many bystanders who were not even questioned by Defendants Philippe and Lewis, this was extremely humiliating for Plaintiff, as Plaintiff attempted throughout the confrontation to walk away from The Male, supra at paragraph 6, 7. Plaintiff was drastically humiliated by said Conspiracy because he was innocent, everybody knew it, and was arrested; this made Plaintiff humiliated, embarrassed, and has eliminated Plaintiff 'will' to walk along that part of Biscayne Bay Park where he enjoyed walking everyday. Plaintiff wished to be compensated for this humiliation.

63.     Plaintiff has developed anxiety as a result of said Conspiracy effectuated by The Defendants. As stated supra at paragraph 62, Plaintiff no longer likes to walk in Biscayne Bay Park due to his now developed anxiety. Plaintiff has developed an obvious distrust of Law Enforcement, and the enjoyment of shopping centers, hotels, grocery stores, and all other places that may have crowds. Plaintiff has completely lost his enjoyment of Downtown Metropolitan Areas, of which, Plaintiff used to find tremendous joy. Plaintiff has lost his enjoyment for being around people and having conversations. Plaintiff has developed a general distrust of people, which is the obvious result of conspiracy such as at bar. The distress The Plaintiff has acquired as a result of said conspiracy has forever negatively changed the life of The Plaintiff with regards to his relationship with people. Plaintiff seeks to be compensated for this Distress which has dramatically decreased Plaintiffs Enjoyment of Life as would be expected.

64.     Plaintiff seeks damages for The Loss of Time it took writing Complaint at bar. Plaintiff spent almost three years writing complaint that would yield no benefit to his Constitutional

vindication if Plaintiff mis-read, mis-wrote, mis-calculated dates to file, or cases to quote. It takes one sentence to write 'Plaintiff spent almost three years writing complaint', however the reality is Plaintiff missed work opportunities, family events, in exchange for reading legal cases, theories, and writing, re-writing complaint at bar. Plaintiff reliving for years the events that captured his Liberty, reliving for years the events at bar that illegally denied his freedom. The Plaintiff seeks to be compensated for this Loss of Time. Plaintiff seeks punitive damage from Defendants Philippe, Lewis and DTGH because their actions were 'intentional'. Florida Statute 768.72 (2) states, '*A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence*'. Florida Statute 768.72 (a) states, '*Intentional Misconduct' means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury*'. Florida Statute 768.72 (b) states, ' '*Gross negligence' means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct*'. Florida Statute 768.72 (3) states, '*In the case of an employer, principal, corporation, or other legal entity, punitive damages may be imposed for the conduct of an employee or agent only if the conduct of the employee or agent meets the criteria specified in subsection (2) and: (b) The officers, directors, or managers of the employer, principal, corporation, or other legal entity knowingly condoned, ratified, or consented to such conduct*'.

64b.     Plaintiff complains Defendant DTGH has violated USC 42 §1983 by using The Authority of The Color of Law to cause Plaintiff to lose Constitutional Right to Liberty without unreasonable intrusion by law enforcement (4th Amendment). Plaintiff complains that 'the specific contacts' described supra, illustrate a very close relationship between Miami Law Enforcement Officers who Acted Under Color of Law, And DTGH Security/Staff. Plaintiff complains that in effect, Defendant DTGH Security/Staff, called Miami Law Enforcement, and had him illegally arrested.

**STATEMENT OF MATERIAL ISSUES OF FACT; causing THIS ACTION for MONETARY DAMAGES, as RELATED TO THE CITY OF MIAMI for: Failure to supervise°/train Internal Affairs Investigators, (*resulting* into a known unwritten policy or 'custom', of deficient Internal Affairs Investigations, that validate non-conformance to Departmental Policy) leading to violation of Plaintiffs Constitutional Right to Due Process, and Liberty, Remedied by 42 U.S.C. §1983 of The United States Constitution, Plaintiff seeks Monetary Damages for his injuries.**

65.     In 2002 The Civilian Investigative Panel was established in February, by City Ordinance 12188, to act as independent civilian oversight of sworn members of The Miami Police Department, and to independently review and/or investigate complaints made against sworn Officers. In May, of that same year, The United States Department of Justice commenced an Investigation into Defendant 'City' Police Department at the request of, then, City of Miami Mayor Manuel Diez, and, City of Miami Chief of Police Raul Martinez who both wrote separate letters to The United States Justice Department asking them to Investigate the policies, practices, and procedures of their Police Department. The Plaintiff will show infra, how these two agencies (The Civilian Investigative Panel, and, The United States Department of Justice) have consistently put Defendant 'City' of Miami on Notice of: <u>Deficient supervision°, thus lack of corrective training, with regard to Internal Affairs Investigations conducted by The Police Department, leading to casual practice of, uncorrected, thus validated, violations of Departmental Policy, and, The Federal Constitutional Rights of The Plaintiff (Public); creating a 'custom' of, validated casual non-compliance to Police Departmental Policy</u>. '*Historically, the guarantee of Due Process has been applied to deliberate[1] decisions of Government Officials to deprive a person of Life, Liberty or Property*', '*(ii) and this history reflects the traditional and common-sense notion that The Due Process Clause is intended to secure The Individual from the arbitrary exercise of government power*', (<u>Collins v. Harker 117 L Ed 2d 264 (1) (b) (i)</u>). (infra ¶ 67).

66.     Liberty: '*The liberty guaranteed by The 14th Amendment to The Federal Constitution denotes not merely freedom from bodily restraint but also The Right to enjoy those privileges long recognized at common-law as essential to the orderly pursuit of happiness by freemen*', <u>Meyer v. Nebraska 262 Us 390</u>. '*The Fourteenth Amendment prohibits a state from depriving any person of liberty without due process of law*,' <u>U.S. v Cruikshank 23 LAW ED pg. 588 at (8.)</u>.

67.     For Defendant 'City' to be liable at bar for failure to supervise or train its police officers, '*its failure to train and supervise must amount to deliberate indifference to the rights of person with whom the police come into contact*,' (<u>American v. Miami 650 F.Supp.2d 1270 at [10-13]</u>). On April 25, 2019 The Assistant Executive Director of The Civilian Investigative Panel wrote to Defendant 'City' Chief of Police Jorge Colina, with regard to The Plaintiffs Internal Affairs Investigation, (<u>EXHIBIT 20: C.I.P (4-25-19) 4-16-19 Panel Meeting</u>). Chief Colina was informed in this letter that The Plaintiff feels '*Internal Affairs really didn't investigate his complaint*' because The Findings of The Investigation (plaintiff <u>EXHIBIT 10: Inter-Office</u>

---

° Failure to 'supervise' is distinct from the 'custom unwritten policy' of ¶82 – 86 as they are two distinct Causes of Action. A failure to supervise alone cannot constitute a 'custom'.

[1] Infra paragraph 67 Defendant 'City' Police Supervisor Jesus Ibalmea arbitrarily denies Plaintiff an Internal Affairs Investigation using 'The Process that was Due'. This deliberate denial was in violation of known Departmental Policy and Plaintiffs Right to Due Process of Law.

Memorandum 9-10-18) didn't mention The Plaintiffs false arrest, and, that The Plaintiff felt The sworn Arrest Affidavit is composed of '*all lies*' (supra at ¶ 10), (plaintiff EXHIBIT 45: IA Statement of Complainant LC at 13:22-14:22). In response Defendant 'City' Police Supervisor, Major Jesus Ibalmea, Commander of Internal Affairs Section, wrote for Chief Colina in plaintiff EXHIBIT 21: Chief Colina response 4-16-19 C.I.P Meeting, '*If the State Attorney's Office determines that the officer(s) arrested Mr. Collins without probable cause or if evidence was fabricated in order to effect the arrest, then they will forward that information to our office.*' Here Defendant 'City' Supervisor Jesus Ibalmea shows deliberate indifference to suspected violation of Defendant 'City' Police Departmental Policy, and Constitutional Right of Plaintiff to a 'Due' Internal Affairs Investigation. Here, we see the validation of the performance of Defendants Philippe, Lewis, and Internal Affairs Investigators when Major Jesus Ibalmea didn't require his subordinates in Defendant 'City' Police Internal Affairs to investigate '*the suspicions*' of The Plaintiff per Defendant 'City' Police Departmental Order 2, Chapter 1.1 which states, '*In order to ensure the integrity of the Miami Police Department it is necessary to promptly and thoroughly investigate suspicions or allegations.*' '*The(se) material facts from The Plaintiff can lead to inference or decisions based on fact*', (Sturdivant v Target Corp 464 F.Supp.2d 600), (Byrd v Blue Ridge 356 US 525).

68.     Supra at bar Defendant 'City' Police Supervisors also showed deliberate indifference to Departmental Policy resulting into Constitutional Violation in paragraph 12. Defendant 'City' Police Officer Kenneth Lewis's Sworn Arrest Affidavit contained improper elements and material evidence was not collected, both of which should have been identified by Defendant 'City' Police Supervisor per Defendant 'City' Departmental Order 11, Chapter 16.4.29. Here accountability fails at multiple levels see ¶ 15, 16, 17 supra[1].

69.     In 2003 The United States Department of Justice wrote to Defendant 'City', a Technical Assistance Letter, in response to The Request from Defendant 'City' Mayor, and Defendant 'City' Chief of Police (¶ 65) which stated in part: '*MPD investigators routinely failed to pursue inconsistencies in officer or witness accounts, and left glaring omissions unexplored. The presence of conflicting statements and omissions, left unresolved by investigators, raised serious questions about the usefulness of the investigations*' (United States Justice Department 2003 Technical Assistance Letter[2]). At bar, plaintiff EXHIBIT 52: Internal Affairs Statement of Officer W. Philippe at 6:14, Defendant Philippe is asked, '*do you remember seeing the cell phones belonging to Mr. Collins, that, they were damaged?*' Defendant Philippe responds, '*I do not recall?*' Plaintiff EXHIBIT 52: Internal Affairs Statement of Officer W. Philippe at 7:20, Defendant 'City' Investigator asks Defendant Philippe, '*now, as far as the cell phones you don't remember seeing them, from your recollection of the incident?*' Defendant Philippe responds, '*I don't remember what duhm, what was the condition, I remember seeing the cell phone, yes!*' Later at plaintiff EXHIBIT 52: Internal Affairs Statement of Officer W. Philippe at 8:18, Defendant Philippe is asked, '*did at any moment Mr. Collins state that the cell phones were damaged by someone?*' Defendant Philippe responds, '*I do remember the suspect mention*

---

[1]Constitutional Policing Agreement' of 2016 put Defendant 'City' on Notice of Supervision needed on multiple levels.
[2]March 13, 2003 DOJ Tech Ast. Letter is Plaintiff EXHIBIT 17.

*something about the damaged cell phone[1].*' Plaintiff <u>EXHIBIT 50: Internal Affairs Statement of Officer Kenneth Lewis at 7:42</u>, Defendant Lewis is asked by Defendant 'City' Internal Affairs Investigator, '*Once uh, property was taken, Mr. uh Collins was uh being placed under arrest, uh did you notice the phones damaged,*' Defendant Lewis immediately responds, 'yes!' Here we see, as identified by The United States Department of Justice (supra this paragraph) a seeming carbon copy description, of inconsistent officer accounts, glaring omissions, and conflicting statements that have not been cognitively resolved. Defendant 'City' Internal Affairs concluded its Investigation into The Plaintiffs complaint stating, '*Mr. Collins did not request a separate police report for damages to his cellular phone(s),*' '*As to the allegation of <u>Improper Procedure</u> against officer Kenneth Lewis: <u>Not Sustained</u>,*' (plaintiff <u>EXHIBIT 10: Inter-Office Memorandum 9-10-18</u> at: (BASIS and FINDINGS).

70.     Defendant 'City' Police Major Jesus Ibalmea, Commander of Defendant 'City' Police Internal Affairs, deliberately left The Plaintiffs complaint of False Arrest, and, Plaintiffs claim of fabricated Arrest Affidavit by Defendant Lewis, 'unexplored'. Defendant 'City' Police Departmental Policy requires prompt investigation of suspicions or allegations, thus, Major Jesus Ibalmea left 'unexplored' the conflicting statements made by The Plaintiff and Defendant 'City' Officers Philippe and Lewis, and, as a result we see a consistence today as identified in 2003 by The United States Department of Justice (supra ¶69) thereby effectively showing deliberate indifference to The Process that was Due, and, identified long ago.

71.     In 2006 The United States Justice Department informed Defendant 'City', '*We recommended that MPD improve accountability by modifying its policies and training to require, among other things, more diligent and thorough investigations by supervisors.*' Plaintiff points out that this very same issue persists. Here we see Major Jesus Ibalmea showing a blatant disregard to the thoroughness of The Plaintiffs Investigation supra at paragraph 67. Thus deteriorating any hope of 'improving accountability', thus validating the action. In 2006 The United States Department of Justice wrote to Defendant 'City', a follow-up Technical Assistance letter in January in which The Department of Justice stated that they, '*recommended that MPD improve accountability by modifying its policies and training to require, among other things, more diligent and thorough investigations by supervisors[2], that MPD improve training for line supervisors and Internal Affairs investigators in interview techniques, assessing the credibility of witnesses, and impartiality in the interview process[3], that training emphasize that investigators should consider all relevant evidence[4], including circumstantial, direct, and physical evidence, as appropriate, in making credibility determinations[5]*". At bar, The United States Department of Justice, identified in 2006 that accountability would be improved through more diligent and thorough investigations by supervisors. At bar, the Defendant 'City' Internal Affairs interview of witnesses regarding The Plaintiffs broken cell phone (¶ 10) (¶ 69), conducted by Defendant 'City' Investigator Roberto Lores, sought only The Male and Female as independent witnesses, failing to conduct interviews of any DTGH Security/Staff, not even once mentioning DTGH Security/Staff in his investigation (plaintiff <u>EXHIBIT 10: Inter-Office Memorandum 9-10-18</u>).

---

[1]Defendant 'City' Police Officer Philippe says he remembers Plaintiff say something about the damaged cell phone, but must have shown indifference to The Plaintiffs Property.

[2]Here we clearly see Defendant 'City' deliberate disregard to known area of deficiency as identified in paragraph 67 when Major Jesus Ibalmea responds to a letter written to Defendant 'City' Chief of Police showing clear disregard to Plaintiffs Right to Due Process.

[3]As identified in paragraph 69, Defendant 'City' Internal Affairs Investigators can be inferred to have been partial, non considerate of relevant evidence and deficient in making credibility determinations. Plaintiff complains additional training has been identified and ignored.

The Plaintiff complains that this was denial of The Process that was Due, identified by The United States Department of Justice in 2006, as an area of needed improvement (supra). The Plaintiff insists that the recommendations this paragraph given to Defendant 'City' by The United States Department of Justice, are not minor, and indeed identify competent Internal Affairs Investigative Policing, and proved wisely compelled by Defendant 'City' Mayor and Chief of Police; if heeded by Defendant 'City', would lead to improved Due Process (Constitutional Policing) provided to The Community that Defendant 'City' Serves. Defendant 'City' was reminded again July 9, 2013 in The United States Department of Justice Findings Letter that: *'By addressing our findings, the City of Miami will not only ensure that its police department operates in a manner consistent with The Constitution, but will improve officer and community safety and increase community confidence,'* (plaintiff EXHIBIT 19: July 9, 2013 DOJ Letter at opening page 1). In 2013 The United States Department of Justice informed Defendant 'City' in this same letter: *'As noted in our summary of the 2002 investigation, Miami Police Department has a history of conducting inadequate (force)[1] investigations. Unfortunately, the troubling trends that emerged in our review of the completed shooting investigations this time are almost identical to the problems that we identified in our previous investigation. For example, we found that the files for recently completed investigations revealed little administrative or operational analysis by Miami Police Department.* Here Plaintiff points out that Defendant 'City' persists in the identical deficiencies within its Police Department Internal Affairs. Supervisor of Defendant 'City' Internal Affairs Section, Major Jesus Ibalmea, as shown in paragraph 67, was indifferent to the deficiencies pointed out by The Assistant Director of The Civilian Investigative Panel. This indifference is critical, as it doesn't procure any 'administrative or operational analysis' which would identify areas of needed supervision and training. Here, The Department of Justice in 2013, says Defendant 'City' Internal Affairs deficiencies, are almost identical to the deficiencies in 2002. At bar there is no disparity in the consistency of this deficiency as identified in 2013 by The Department of Justice. Plaintiff infers deliberate indifference creating unwritten policy of validated non-compliance to Policy.

72.     In response to The Department of Justice findings and recommendations regarding Defendant 'City' Police Department Internal Affairs, Defendant 'City' made adjustments to its Operating Procedures, thus, The Triers of Fact can infer Defendant 'Cities' acknowledgment to The Findings of The United States Department of Justice.

73.     November 15, 2013, Defendant 'City' Police Department Officer Vincent Miller was witnessed by a citizen named Richard Rosengarten tasering 'a man' while working his off-duty job at Publix Supermarket in downtown Miami. Officer Vincent Miller did not arrest 'this man' or report the incident which is a violation of Defendant 'City' Police Departmental Policy, and a violation of 'the man's' Constitutional Right to Due Process. Richard Rosengarten reported the incident to Defendant 'City' of Miami Police Department Internal Affairs. Although Officer Vincent Millers taser log showed that he armed his taser at 4:19:02 pm (plaintiff EXHIBIT 14: Officer Vincent Miller Taser Log Rosengarten)[2], and the trigger was pressed four times within a minute producing a 'dry stun' (just as the witness Richard Rosengarten described when his report

---

[1] Plaintiff rejects any attempt by Defendant 'City' to dissect their deficiency in Internal Affairs Investigations into 'categories'. Plaintiff has identified a deficiency as a whole within Defendant 'City' Police Department Internal Affairs Investigations.
[2] This EXHIBIT is being procured through Interrogatory (FED.R.CIV.P 33).

was given to Defendant "City" Police Department Internal Affairs), Defendant 'City' Officer Vincent Miller denied using his taser, and was not held accountable by Defendant 'City' Internal Affairs for improperly using his taser, and for violating The Constitutional Right of The Citizen he tased. Defendant 'City' Internal Affairs would conclude this case as 'information only', refusing to apply the needed discipline or corrective supervision Officer Miller needed, a chain of supervisors signed off on this oversight in an inter-office memorandum[1]. Supervisors showing deliberate indifference to the material evidence of Officer Millers 'taser log', denied The Due Process Rights of The Citizen who was tased. Defendant 'City' Police Department Internal Affairs closed The Case despite numerous Departmental and Constitutional Violations, Officially validating Officer Vincent Millers conduct, using the same deficient investigatory deficiencies identified by The Department of Justice in 2003, 2006 and 2013 supra, specifically investigators failing to pursue inconsistencies in officer/witness accounts, leaving glaring omissions unexplored (Officer Vincent Millers taser log proved he used his taser, Officer Miller denied using his taser), and supervisors showing deliberate indifference to known areas of deficiency. In 2006 The United States Department of Justice identified the same deficiency we see here when it was stated, '*We recommend that the MPD improve accountability by modifying its policies and training to require, among other things, more diligent and thorough investigations by supervisors*'. The Plaintiff complains that this evidences continued deliberate indifference to KNOWN glaring deficiencies within Defendant 'City' Police Departments Internal Affairs. Defendant 'City' Police Departmental Order 1, Chapter 11.6.41.2 states, '*Members and civilian employees of The Department shall not make a false statement or falsify any written or verbal report made to a superior officer, nor shall they intentionally withhold material matter from the report or statement.*' Defendant 'City' Police Department Internal Affairs Section, did not hold Officer Vincent Miller responsible for his false statements to Internal Affairs[2].

74.     Defendant 'City' Police Department Internal Affairs received another complaint concerning Officer Vincent Miller (Officer Miller identified supra ¶ 73). That complaint stemmed from Officer Miller throwing a handcuffed Citizen to the floor, and repeatedly threatening The Citizen by placing an armed taser to The Citizens face. The Citizen reported to Defendant 'City' Internal Affairs that this was all without provocation. Defendant 'City' Officer Vincent Miller denied using his taser at all. Defendant 'City' Police Department Internal Affairs Investigators, again, failed to perform a proficient investigation and determined The Citizens Complaint was 'inconclusive', though Officer Millers taser log showed Officer Miller did in-fact use his taser as described by The Citizen. Defendant 'City' Internal Affairs Investigators, again, did not hold Officer Miller responsible for lying regarding the improper use of his taser, and closed the case as 'inconclusive', despite his taser log showing he indeed used his taser, this finding of 'inconclusive' was signed by multiple supervisors in an Inter-Office Memorandum thus validating the performance and conduct of Defendant 'City' Police Officer Vincent Miller[2].

75.     At bar, Plaintiff complains Defendant 'City' Internal Affairs restricted his Internal Affairs Complaint to his broken cell phone, ignoring The Plaintiffs complaint regarding his false arrest, and allegation that Defendant Lewis's arrest affidavit was 'full of lies' (plaintiff EXHIBIT 45: IA Statement of Complainant LC at (9:50 – 10:12), (13:15 – 15:31), and (20:29 – 21:07)), (plaintiff EXHIBIT 10: Inter-Office Memorandum 9-10-18). Plaintiff complains that lack of supervision, result in violating Departmental Policy (¶ 17). Without correction, this denies The Plaintiff Due Process, '*procedural due process rules are shaped by the risk of error inherent in the truth-finding*

---

[1] This Inter-Office Memorandum is Plaintiff EXHIBIT 10.2 and is being procured through Interrogatory (FE.D.R.CIV.P.33).
[2] Plaintiff believes this creates Matter of Great Public Concern.
[3] This EXHIBIT is being procured through Interrogatory (FED.R.CIV.P.33).

*process, such rules minimize substantively unfair or mistaken deprivations of life, liberty, or property by enabling person to contest the basis upon which a State proposes to deprive them of protected interests,'* (Carey v Piphus 55 L Ed 2d 262 at [6]). The Due Process Clause protects Plaintiff against practices and policies that violate precepts of fundamental fairness, the standard query is whether the challenged practice violates *'a fundamental principle of liberty and justice which inheres in the very idea of a free government and is the inalienable right of a citizen of such government'*, (Twining v. New Jersey 211 U.S. 78 (1908). At bar, Plaintiff insist The Triers of Fact will infer that the deficiencies identified supra (this paragraph), regarding his internal affairs investigation conducted by Defendant 'City' Police Internal Affairs, was knowingly conducted with deliberate indifference to The Plaintiffs Constitutional Right to Due Process. Plaintiff insists Due Process is, *'implicit in the concept of ordered liberty'*, and *'of the very essence of a scheme of ordered liberty'* (Palko v. Connecticut 302 us 319), denial of which *'offend[s] those canons of decency and fairness which express the notions of justice of English-speaking peoples even toward those charged with the most heinous offenses'*, (Rochin v California 342 us 165). Supra we see Defendant 'City' has been on continuous notice since 2003 (supra ¶ 67 - 74) of said Deficiencies within its Internal Affairs, and still to date, the same deficiencies that defy competent Policing Investigations, have caused patrol officers such as Defendants Philippe and Lewis at bar, to casually disregard Departmental Policy, and, The Constitutional Rights of Plaintiff at bar, due to said unwritten policy of deficient Defendant 'City' Police Internal Affairs Investigations that validate non-compliance to Police Departmental Policy, which, as at bar, has violated Plaintiffs Right to Due Process.

76.    Plaintiff complains Defendants Philippe and Lewis knew, Internal Affairs Investigations that validate actions against policy, would validate their illegal detainment, and false arrest of The Plaintiff, and they were right based on The Material Evidence at bar, Defendant 'City' Police Internal Affairs denied The Plaintiff The Process that was Due regarding his Internal Affairs Investigation by completely ignoring parts of The Plaintiffs complaint. *'The Fourteenth Amendment prohibits a State from depriving any person of liberty without due process of law, and from denying to any person within it's jurisdiction the equal protection of the laws'* (U.S. v. Cruikshank 23 LAW ED pg. 588 at (8.)). Plaintiff claims a significant part of his Liberty is his Right to Due Process as guaranteed by The Fourteenth Amendment supra at paragraph 66.

77.    Plaintiff insists that because of Defendant 'City' deliberate indifference to supervise its Police Departments Internal Affairs, while knowing The Deficiencies within Internal Affairs would inevitably lead to violation of Plaintiff Constitutional Right to Liberty and Due Process, displays on its face, intentional infliction of emotional distress which is monetarily applicable under Florida Law. *'Elements of claim for intentional infliction of emotional distress. 1) extreme and outrageous conduct, 2) an intent to cause or reckless disregard to the probability of causing emotional distress, 3) severe emotional distress suffered by Plaintiff 4) proof conduct caused the emotional distress'*, (Gonzalez v. U.S. 231 F.Supp 2d 1199 [15]). Plaintiff first being injured by detainment, then arrest, sought remedy despite those injuries from Defendant 'City' Police Department Internal Affairs. Unknowingly, Plaintiff would receive increased distress injury when Defendant 'City' Internal Affairs ignored important parts his 'internal affairs complaint'. Plaintiff complained to Defendant 'City' Internal Affairs that Police Officer Kenneth Lewis falsely wrote statements in a sworn arrest affidavit to secure a false arrest upon him (supra ¶67, plaintiff EXHIBIT 10: Inter-Office Memorandum 9-10-18). Plaintiff has developed a loss of The Enjoyment

of Life due to Defendant 'Cities' indifference to Plaintiffs Liberty and Due Process Rights. Plaintiff was severely injured by Defendant 'City' ability to totally disregard the Material Evidence in favor of denying him Liberty and Due Process. Plaintiff complains that this is the most egregious infliction of distress a 'City' can knowingly un-leash upon one of its Citizens. Plaintiff has lost his enjoyment for life and has become weary of people because he has had to fight for Justice, this fight for Justice has placed yet another level of distress upon The Plaintiff. The fact is, if Plaintiff did not fight for the claims at bar, said claims would go un-noticed though very real, and material. The obvious Mental Anguish that comes from being denied Justice (due process) consistently, *'Carey's requirement that actual injury be proven before a plaintiff may recover serves merely to insure that plaintiffs are not compensated for illusory injury. We must bear in mind that the civil rights laws are intended to provide broad consistent recompense for violations of civil rights'*, (Bolden v. Septa 21 F.3d 35 at [9,10]. *'Not only have other courts of appeals have permitted recovery for emotional distress for a section 1983 violation based upon plaintiffs testimony alone, but all of the courts of appeals (agree)'*, (Bolden v. Septa 21 F.3d 34 at IV (and ft note 3 and 5)).

78.     Plaintiff expressly identified to Defendant 'City' Police Internal Affairs the circumstances of his false arrest. Defendant 'City' Police Internal Affairs totally ignored Plaintiffs complaint. Plaintiff complains Defendant 'City' has intentionally caused him intentional distress because Defendant 'City' has known that its Police Department Internal Affairs conducts egregiously deficient investigations, and Plaintiff complains it is clear, these deficient investigations cause emotional harm to Citizens. Plaintiff seeks monetary damages in attempt to be made whole from the emotional wound of distressed placed upon The Plaintiff.

79.     Plaintiff seeks Compensatory Damages from loss of normal life/loss of time. Plaintiff spent almost three years writing Complaint at Bar. Plaintiff relived daily the emotional fact on its face, that, 'Justice had to be fought for and not 'given' by document'. The United States Constitution provides that its guarantees are for all men. However at bar, Plaintiff was denied his Right to Due Process by Defendant 'City' deliberately, and had to spend almost three years writing Complaint at bar missing his children's birthdays, missing days at work, and jobs that he could have been involved with. Plaintiff had to study Law in an effort for Justice. It is fact, that one oversight of a 'procedural rule', could place Plaintiffs Complaint at bar lame. It is fact, that a statute of limitation could render Plaintiffs complaint lame. Plaintiff wished to be compensated for this loss of time, and the distress associated with this 'type' of Loss of Time. It is proven by the meticulous writing of Complaint at bar that much work has been invested, and Plaintiff finds it not hard to believe that compensation for his loss of time to pursue Justice will be fairly compensated by a jury; with it fully in mind of those who decide that compensation, of the hardships The Plaintiff had to endure, and the Life and Liberty Plaintiff had to forfeit, for The Justice Sought at bar through compensation, *'Distress is a personal injury familiar to the law, customarily proven by showing the nature and the circumstances of the wrong and its effect on The Plaintiff'*, (Carey v. Piphus 435 US at 263-4).

80.     Plaintiff seeks Compensatory Damages supra, as *'the greater the outrage, the less should be required of a plaintiff, by way of proof to establish severe distress'*, (Hackney v. Woodring 634 A.2d 224 (ft.note 5) (Pa.1993)).

81.     Triers of Fact can infer Plaintiffs injuries from the circumstances[1].

[1] Carey v. Piphus 55 L Ed 2d 264 at [8].

**STATEMENT OF MATERIAL ISSUES OF FACT; causing THIS ACTION for MONETARY DAMAGES, as RELATED TO THE CITY OF MIAMI for: Un-Official Policy/Custom of 'Internal Affairs Investigations that validate violations of Departmental Policy and The Federal Constitutional Rights of The Plaintiff (Public[oo])'. This being, repugnant to Plaintiffs right to Due Process under The United States Constitutions' Fourteenth Amendment, Plaintiff finds relief in 42 U.S.C. §1983 of The United States Constitution,.**

82.     Defendant 'City' persists, 1) Un-Official pattern/policy/custom (supra ¶65) that amounts to widespread[o] practice (Pyle v. Woods 874 F.3d 1259 at (18.)), in violation of The Plaintiffs Constitutional Right to Due Process which is protected by The Fourteenth Amendment to The United States Constitution; Defendant 'City' persists: 2) a proven deliberate indifference to train and supervise employees, including supervisors, of its Police Internal Affairs Section (Pyle v. Woods 874 F.3d 1259 at (18.), who validate Officers non-compliance to Defendant 'City' Police Departmental Policy, and Plaintiffs (Citizens) Constitutional Rights, creating Officers who casually disregard Departmental Policy, and Plaintiffs (Citizens) Constitutional Rights. '*A pattern or practice may be found by examples representing typical conduct, as opposed to isolated instances*', (Int'l Bhd v. United 431 U.S. 324, 336 n16 (1977)). Supra ¶67 – 76 we see 'typical conduct' of Defendant 'City' Internal Affairs. Supervision alone is not 'pattern/practice, custom' with regard to 42 U.S.C. §1983, creating here, a separate cause of action from Defendant 'City' failure to Supervise/Train (supra ¶65 – 81).

83.     '*For municipal liability "a plaintiff must identify (2) an unofficial custom or practice of the [city] shown through the repeated acts of a final policymaker for the city,"'* (American v. Miami 650 f.Supp.2d 1267 [4,5]). Supra in ¶67 Defendant 'City' Police Major Jesus Ibalmea signed an inter-office memorandum ratifying the deficient Investigation of his subordinates. These actions are repeated by Defendant 'City' Policy Makers supra at ¶73 and 74.

84.     42 U.S. Code §1983 which states in part, '*Every person who, under color of any custom, of any State, causes to be subjected, any citizen of The United States within the jurisdiction there of, to the deprivation of any rights, privileges, or immunities secured by The Constitution and Laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress*'.

85.     '*First inquiry in any case alleging municipal liability under §1983 is question of whether there is direct causal link between municipal policy or custom and alleged constitutional deprivation*' Canton v. Harris 109 S.Ct. 1197, 489 U.S. 378. Supra at 67 - 76 Defendant 'City' of Miami with full awareness, has allowed a gross negligence of proper oversight with regard to it's Police Departments Internal Affairs Investigations, thus, leading to the deprivation of The Plaintiffs (Citizens) Constitutional Right to Due Process, and Liberty[1], thus injuring The Plaintiff from lack of corrective action (training), and reprimand, thus validating deficiency to Policy.

86.     '*The Fourteenth Amendment prohibits a State from depriving any person of liberty* (supra ¶66) *without due process of law, and from denying to any person within it's jurisdiction the equal protection of the laws*' U.S. v. Cruikshank 23 LAW ED pg. 588 at (8.); The Plaintiff complains

---

[oo]This creates an issue of 'Great Public Importance'.

[o]Plaintiff identifies failure of Defendant 'City', to stop known (since 2003 (¶70 –76)) deficiency within its Police Department Internal Affairs, that fails to hold Officers responsible for violations of Departmental Policy, and Citizens Constitutional Rights leading to casual deprivation of such.

[1]The security of ones privacy against arbitrary intrusion by the police is implicit in the concept of ordered liberty, and as such enforceable against the States through The Due Process Clause. (Elkins v. US 4 L ed 2d 1670 at (2.)). Supra ¶66.

that his liberty was illegally taken from him by Defendant Lewis when un-Constitutionally arrested supra paragraphs 6-9, because of Defendant 'City' un-official Policy (supra ¶ 82).

87.     Plaintiff complains that Defendant 'City' has also allowed its Police Department Internal Affairs to violate his Rights under The Fourteenth Amendments Equal Protection. See paragraph 99. Defendant 'City', in allowing its Police Internal Affairs to validate non-conformance to policy, creates officers who violated The Plaintiffs Right to Equal Protection of The Law. Defendant(s) Philippe and Lewis ignored Plaintiffs request to report his cell phone arbitrarily.

Plaintiff seeks Compensation
88.     *'Not only have 'other' Courts of Appeals permitted recovery for emotional distress for a Section 1983 violation based upon Plaintiffs testimony alone, but all of The Courts of Appeals (agree),'* (Bolden v. Septa 21 F.3d 34 at iv and (ft.note 3)), *'the greater the outrage, the less should be required of a Plaintiff by way of proof to establish severe distress,'* Hackney v. Woodring 634 A.2d 224 (ft. note 5) (Pa.1993)[1]. Plaintiff complains Defendant 'City' knew, non-correction of known validated non-compliance to its Police Department Policy by its Internal Affairs would lead to casual deprivation of Plaintiffs Constitutional Rights by its Police Officers. Supra at paragraph 15 and 17, The United States Department of Justice, with, Defendant 'City' of Miami, agreed to Constitutional Policing Agreement. The Policies Agreed upon, including improved supervision of Officers by Supervisors. At bar, Defendant 'City' failure to implement corrective action, has lead to Plaintiffs injury of Due Process violation by Defendant 'City' Police Department Internal Affairs who validate non-compliance to Departmental Policy by Officers.

89.     Plaintiffs seeks compensation for the Loss of Time it took to write Complaint at bar. It must be recognized, Plaintiff is not an attorney, and has gained Constitutional Federal Law prudence, through continuous study in pursuit of Justice. Plaintiff appeals to This Courts prudence, in the recognition that an oversight, of Federal Civil Court Rules, or Laws, such as Florida Statute 768.28, could render Plaintiffs Pursuit for Justice lame. It took Plaintiff almost 3 years to write Complaint at bar. Plaintiff oversight of any Statute of Limitations such as The 'four-year statute of limitations for §1983 claims in Florida,' would render Plaintiff pursuit for Justice at bar lame. Plaintiff requests This Courts acknowledgement of his loss of time in writing Complaint at bar, thus recognizing Plaintiff loss of quality of life in This Pursuit for Justice. Plaintiffs continual study for competent Complaint at bar put The Plaintiffs life (liberty) on hold, Plaintiff put The promises of The United States Constitution first. The Plaintiff by time, study, writing, spell checking, and continual grief spend a majority of two-years studying and writing Complaint at bar. Plaintiff request Compensation for the significance of his Loss of Time for said Pursuit of Justice. *'A party who prevails in any action or proceeding in connection with enforcing the provisions of 42 United States Code section 1983 may be awarded reasonable attorneys' fees and costs'* Coe v. Town of Blooming Grove 714 F.Supp.2d 439. Plaintiff recognizes he is not an attorney. Plaintiff points out Coe here, in recognition that, two-year study and writing of a competent complaint, would yield significance monetarily for an attorney, and Plaintiff seeks to be compensated for his Loss of Time. Plaintiff complains to This Court that Citizens who pursue their Rights as guarenteed by The United States Constitution should be compensated in an attempt to be made whole from those violations. It is not unusual for This Court to award compensentory damages to Plaintiffs for loss of time. At bar, Defendant 'City'

knowingly violated Plaintiffs Rights to Due Process by a competent Internal Affairs Investigation. Plaintiff had to go through Federal Court for vindication of his Rights denied by Defendant 'City'. Plaintiff seeks to be compensated for his Loss of Time in seeking this vindication.

90.     The Supreme Court has held that a civil rights plaintiff cannot be considered a prevailing party unless he receives "*at least some relief on the merits of his claim*" *Farrar v. Hobby, 506 U.S. 103*. A party does not need to be successful on every claim, "*nor even the most crucial one,*" to be a prevailing party. LaRouche v. Kezer, 20 F.3d 68, 71 (2d Cir.1994) (citing Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 791, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)). Success as to a "*significant claim*" satisfies the prevailing party standard. The party seeking the award bears the burden of providing evidence to support the number of hours worked and claimed rates. (Hensley, 461 U.S. at 433). At bar Plaintiff did not bargain for the dismissal of arresting charges, there was a bona-fide termination of the prosecution in The Plaintiffs favor where Defendant 'City' could not produce, and still will not show, one piece of bone-fide Material evidence to suggest competent legal arrest, and Internal Affairs Investigaion of/for The Plaintiff. Defendant 'City' is liable to The Plaintiff for damages under 42 U.S.C. §1983 for their deliberate indifference to 'custom/pattern' of known deficient Internal Affairs Investigations, that validate Defendant 'City' Police officers disregard to Departmental Policy, and, The Rights of The Plaintiff (Citizens) at bar. Plaintiffs in Federal Court, have prevailed by precedent, in recovering monetary damages, for testimony of the effects upon themselves, from the egregious actions of Defendants.

91.     '*[E]xpert medical evidence is not required to prove emotional distress in section 1983 cases.*' (Bolden v. Southeastern Pennsylvania Transp. Authority, 21 F.3d 29, 36 (3d Cir 1994)).

92.     '*When a plaintiff seeks compensation for an injury that is likely to have occurred but difficult to establish ... presumed damages may roughly approximate the harm that the plaintiff suffered and thereby compensate for harms that may be impossible to measure,*' (Stachura 477 U.S. at 310-11).

93.     Compensatory damages is a Section 1983 case '*may include not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation .., personal humiliation, and mental anquish and suffering,*' (Memphis Community v. Stachura 477 U.S. 299, 307 (1986)).

**STATEMENT OF MATERIAL ISSUES OF FACT; causing THIS ACTION for MONEARY DAMAGES, as RELATED TO WANDLER PHILIPPE AND KENNETH LEWIS in their 'individual capacit(ies)' for: Using The Authority of The Color of The Law, to knowingly: Illegally Detain, Illegally Arrest, and, deny The Plaintiff Due Process of Law, Equal Protection of Law[1], and Liberty. Plaintiff seeks compensatory and Punitive damages.**

94.     The Plaintiff complains Defendants Philippe and Lewis acted with ill will, and, intentional (supra ¶61) actual malice when they seized (detained) Plaintiffs Person prior to arresting him (plaintiff EXHIBIT 50: Internal Affairs Statement of Officer Kenneth Lewis at 6:20). Defendant 'City' Departmental Order 11, Chapter 1.7 states, '*An officer may approach and detain any person under circumstances that reasonably indicate that such person has committed is committing or is about to commit a violation of criminal law*'. It can be inferred by Triers of Fact, that seizing (detaining) The Plaintiffs Person with the information Defendants Philippe and Lewis had at the time of detainment was not '*circumstances that reasonably indicate that (plaintiff) had committed or was committing, or about to commit a violation of criminal law*', as required by said Departmental Policy. Plaintiff believes Triers of Fact can infer Plaintiff was detained because he refused to leave without a police report concerning his cellular phone, as described in paragraph 6-9 supra. The Material Facts are: The Plaintiff was voluntarily on scene when Defendants Philippe and Lewis arrived (plaintiff EXHIBIT 50: Internal Affairs Statement of Officer Kenneth Lewis at 4:54), Plaintiff flagged down these Defendants upon their arrival and explained the course of events (plaintiff EXHIBIT 50: Internal Affairs Statement of Officer Kenneth Lewis at 5:20), (plaintiff EXHIBIT 52: Internal Affairs Statement of Officer W. Philippe at 5:07). Defendant Lewis and Philippe heard The Plaintiffs testimony of events, and, without incident Defendant Philippe said he '*secured knife from plaintiffs bag*' (plaintiff EXHIBIT 52: at 3:07), Defendant Lewis stated, '*yes once um, asked him about the knife, secured the knife, and um he was detained.*'[2] The Plaintiff was detained in handcuffs, in the back of Defendant Philippe's Patrol Car shortly after speaking with DTGH Security Member[3] (supra ¶26), (supra ¶52) and just prior[4] to Defendants Philippe, Lewis, and said DTGH Security Member speaking with The Alleged Victims (who had to be located) who The Plaintiff described as The Assailants to Defendants Philippe and Lewis. Plaintiff seeks damages for this detainment.

95.     To prevail on a §1983 false arrest claim, '*a plaintiff must establish that: (1) defendant intentionally arrested him or had him arrested; (2) plaintiff was aware of the arrest; (3) there was no consent to the arrest; and (4) arrest was not supported by probable cause*', (Weinstock v. Wilk 296 F.Supp.2d 246 [1,2]).  Supra at paragraph 9, Plaintiff explained that he made first contact with Defendant 'City' Police Officer Philippe and explained the course of events as described in ¶ 6-7 supra, which corresponded with plaintiff EXHIBIT 41: Security Camera Plaintiffs Approach at 16:44:28 – 55. Defendant Wandler Phillie in plaintiff EXHIBIT 52: Internal Affairs Statement of Officer W. Philippe at 3:53 states, '*the first contact was him* (plaintiff), *because as soon as we arrived on the scene he* (plaintiff) *flagged us down so we made contact with him* (plaintiff) *and we were talking to him* (plaintiff)'. The Sworn Arrest Affidavit by Defendant Lewis states, '*he* (The Plaintiff) *pulled up his shirt to expose the knife that he had in his pants.*' The Plaintiff never had on a shirt, The Plaintiffs fishing knife was in his bag, and

---

[1] Plaintiff believes Defendants Philippe and Lewis will concede denial of Plaintiffs Right to Equal Protection of the Law as Guaranteed by The United States Constitutions 14th Amendment; otherwise admission would be, (this is) routine behavior. (Infra ¶99).
[2] Defendant Lewis makes this statement to Defendant 'City' Internal Affairs (plaintiff EXHIBIT 50: at or around 6:20).
[3] Defendant Lewis never identified DTGH Security Staff as witnesses or mentioned them in any documents pertaining to Plaintiffs arrest.
[4] At this moment, based on the reasonable information Defendant Lewis and Philippe had, Plaintiff feels he was illegally handcuffed and detained, Triers of Fact can infer Truth here, based on Plaintiffs eventual arrest, despite The Material Physical Evidence procured on the scene.

The Plaintiff attempted to walk away several times while The Female pursued him trying to initiate an physical attack. These conflicting statements by The Plaintiff, Witness (The Male), and Alleged Victim (The Female), present a prudent cause to examine surveillance video for probable cause, before making an arrest. Plaintiff EXHIBIT 03: Arrest Affidavit, sworn to and written by Defendant Lewis states, '*video surveillance camera from the lobby captured the incident*', an affirmative statement. Plaintiff complains the material facts obtained from such a 'video' would not warrant a reasonable man to believe that probable cause existed to arrest The Plaintiff, there-by leading The Plaintiff to infer that his original detainment was malicious prior to the arrest. To date, no, 'lobby video', has been procured by The Plaintiff, or Defendant 'City'. '*The Fourth Amendment applies to all seizures of the person, including seizures that involve only a brief detention short of traditional arrest; whenever a police officer accosts an individual and restrains his freedom to walk away, he has "seized" that person, and The Fourth Amendment requires that the seizure be reasonable*' (Brown v. Texas 61 L Ed 2d 359). The physical material video evidence Defendants Philippe and Lewis gathered after detaining The Plaintiff should have procured The Plaintiffs release (supra ¶6), however it procured The Plaintiffs arrest, thus, inferring for The Triers of Fact that, indeed, the initial detainment was a product of intentional misconduct; it can be inferred by the material evidence that The Plaintiffs original detainment was secured illegally because The Plaintiff insisted on making a report concerning his cell phone (supra ¶ 7, 9). The surveillance video mentioned in Defendant Lewis's Arrest Affidavit has never been seen, and, was not procured. Procurement of evidence is required per Defendant 'City' Departmental Police Policy (supra ¶12, ¶22). '*Probable cause to arrest exists when an arrest is objectively reasonable based on the totality of the circumstance*', Rankin v. Evans 133 F.3d 1425, 1435 (11th Cir. 1998). Plaintiff seeks monetary damages for this false arrest.

96.      At bar, Plaintiffs material evidence shows Defendants Philippe and Lewis, due to lack of probable cause, manufactured probable cause to create a seemingly legal arrest upon The Plaintiff in violation of Plaintiffs Fourth Amendment Right to be free in his person from unreasonable restraint (detainment) and arrest; both remedied by 42 U.S.C. §1983. Defendant 'City' Police Departmental Order 1, Chapter 11.6.28.1 require Defendant 'City' patrol officers to know Federal, State, Municipal, and County Laws, as well as '*the elements that constitute criminal acts in violation of the various sections thereof, and they shall acquaint themselves with the fundamental rules of evidence*'.

97.      Plaintiff complains, that if you remove said 'lobby surveillance video' mentioned in Defendant Lewis' Arrest Affidavit (plaintiff EXHIBIT: 03), and, remove the statements made by The Male, who, Defendants Philippe and Lewis used as their only witness (supra ¶26); Then add The Plaintiffs surveillance video (plaintiff EXHIBIT 41), and the statements provided by The plaintiff (¶6 and 7 supra), you will see that omitting said false information, and admitting readily available facts, would not support probable cause for Defendant(s) Lewis and Philippe's amalgamated detainment and arrest of The Plaintiff. '*In Civil Rights cases involving claim of false arrest or prosecution without probable cause, a court must put aside allegedly false information, supply any omitted information, and determine whether the contents of the corrected affidavit would have supported a finding of probable cause; if at the conclusion of analysis probable cause remains, no constitutional violation of arrestee's Fourth Amendment rights has occurred*', (Weinstock v Wilk 296 F.Supp.2d 242). At bar Plaintiff insists, Triers of

Fact will infer no reasonable probable cause to detain Plaintiff, and certainly no reasonable probable cause to arrest Plaintiff. '*In a false arrest action, the defendant must establish the presence of probable cause*', (Toomey v. Tolin 311 So.2d 678 (FLA 1975)) / 336 So.2d 604 (FLA 1976). '*Under The Fourth Amendment, The standard for arrest is probable cause, defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the suspect has committed or is committing an offense*', (Gerstein v Pugh 43 L Ed 2d 57).

99.      Class of one Equal Protection Claim recognized where Plaintiff has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment, here, The Equal Protection Clause purposes to secure every person against intentional and arbitrary discrimination, (Village v. Olech 145 L Ed 2d 1061(1a,1b)). Defendant(s) Philippe, and Lewis intentionally demanded Plaintiff withdraw his grievance concerning his cellphone in exchange for his Liberty to be free of detainment and arrest, were as others similarly situated should retain that Right without fear of arrest (supra ¶9). Plaintiff complains that it was irrational, capricious and despotic for Defendant 'City' Police Officers to insist Plaintiff withdraw his complaint concerning his cellular phone in exchange for his continued freedom. '*Plaintiff can allege an Equal protection violation by asserting that State action was motivated solely by a spiteful effort to 'get' him for reasons wholly unrelated to any legitimate state objective*', (Esmail v. Macrane 53 F.3d 180; Village v. Olech 145 L Ed 2d 1063). Here Defendants Philippe and Lewis used The Authority of The Color of Law, given to them by The State, to deprive The Plaintiff (Class of One) of Equal Protection. The purpose of The Equal Protection Clause of The Fourteenth Amendment is to secure every person within State Jurisdiction against irrational and arbitrary discrimination whether occasioned by a Statute or by its improper execution through duly constituted agents, (Village v. Olech 145 L Ed 2d 1063). '*Selective prosecution where decision to prosecute is made in retaliation for exercise of Constitutional Right is actionable under Equal Protection Clause*,' (Rowell v Holt 850 So.2d 480 [4]). Plaintiff seeks compensatory and punitive damages for these violations. (see ¶29).

100.    Plaintiff complains Defendant Philippe and Lewis 'knowingly', 'maliciously' and 'intentionally' denied The Plaintiff The Process that was Due in violation of The Due Process Clause of The United States Constitution's 14th Amendment. '*The Fourteenth Amendment prohibits a State from depriving any person of liberty without due process of law, and from denying to any person within it's jurisdiction the equal protection of the laws*' U.S. v. Cruikshank 23 LAW ED pg. 588 at (8.); The Plaintiff complains that his Liberty was illegally taken from him by Defendant(s) Lewis and Philippe when un-Constitutionally arrested, supra paragraphs 6-9. Defendant 'City' Officers Lewis and Philippe using The Authority of the Color of Law to 'knowingly' illegally deny The Plaintiff Due Process and Liberty as guaranteed by The United States Constitutions Amendment XIV (14). Plaintiff complains that it is a denial of his Liberty to be denied '*those privileges long recognized as essential*', (Meyer v. Nebraska 262 U.S 390), (such as freedom from unlawful, detainment, arrest, and denial of reasonable engagement, concerning Plaintiffs complaint to Defendants Philippe and Lewis regarding his cell phone.

101.    '*Under Federal Law and Florida State Law the totality of circumstances standard required to determine existence of probable cause for arrest is met when the facts and circumstances within the officers knowledge of which he or she has reasonable trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the*

*suspect has committed, is committing, or is about to commit an offense'*, (Owaki v. Miami 491 F.Supp 2d 1140 [2]). The Material Evidence available to Defendant(s) Philippe and Lewis, would not have provided any probable cause to arrest Plaintiff. Said Defendants maliciously used The Authority of the Color of State Law to illegally detain, arrest, and deny The Plaintiff Due Process and Equal Protection of Law. Plaintiff seeks damages for this Intentional Infliction of Emotional Distress. Plaintiff insists that, said Defendants knew, that illegally detaining, arresting, and denying 'Due' processes, would cause obvious infliction of emotional harm.

102.    At bar Plaintiff rejects any attempt by Defendants Philippe and Lewis invoke 'arguable probable cause' or 'qualified immunity', because The Standard for 'arguable probable cause' defeats Defendants attempts for protection thereof because, at bar, an Officer could not have found probable cause to detain or make an arrest at all (thereby not being arguable) and, thereby defeating reception of 'qualified immunity' because of the malicious, arbitrary and intentional circumstances that can be inferred from The Material Facts at Bar.

103.    *'Elements of claim for intentional infliction of emotional distress. 1) extreme and outrageous conduct, 2) an intent to cause or reckless disregard to the probability of causing emotional distress, 3) severe emotional distress suffered by Plaintiff 4) proof conduct caused the emotional distress'*, (Gonzalez v. U.S. 231 F.Supp 2d 1199 [15]). Plaintiff seeks Compensatory Damages from Defendants Philippe and Lewis for The Intentional Infliction of Emotional Distress caused by their intentional illegal detainment, arrest, denial of Liberty, denial of Due Process, and denial of Plaintiffs Right to Equal Protection of Law. Plaintiff insists Defendants knew that denial of these Rights would lead to Severe Emotional Distress within The Plaintiff. The material facts are that The Plaintiff called and waited for Miami Law Enforcement to arrive so he could make a police report concerning his broken cell phone, and, was handcuffed and detained because Plaintiff would not 'just leave' (supra ¶7, 9). Plaintiff injury of 'loss' of Liberty from this initial detainment (end of ¶9), inflicted substantial initial injury upon The Plaintiffs person. At the moment of Plaintiffs initial detainment, Defendants Philippe and Lewis responded to Plaintiff by using The Totality of The Material Facts to illegally detain him, unjustly denying The Plaintiff of his Liberty causing emotional injury. Plaintiff insists that Defendants knew that handcuffing and putting Plaintiff in patrol car because he wanted to make a report concerning his cell phone, would cause severe emotional injury, *'distress is a personal injury familiar to the law, customarily proven by showing the nature and the circumstances of the wrong and its effect on the plaintiff'*, (Carey v. Piphus 435 US at 263-264). Plaintiff insists that this captivity of the 'initial detainment', cannot be said to be 'non' intentional infliction of emotional distress by Defendants Philippe and Lewis, because The Material Evidence shows a malicious false arrest followed after, this detainment, which infers this initial detainment, to be malicious and 'intentionally' malicious. It is obvious, that using The Authority of The Law, to illegally capture a person (detain), because they insist on reporting a crime, causes severe emotional distress. The Emotional Injury of being ignored, illegally captured (detained), chained (handcuffed), and embarrassed by those sworn to uphold The Laws of Due Process, and Liberty, are ripe for the compensation. Plaintiff places great value on all aspects of his Liberty, and The Promises of Due Process and The Fourth and Fourteenth Amendments to The United States Constitution; This denial of such, has placed emotional distress upon Plaintiff. Plaintiff does not want anyone to devalue his Mental Awareness of The Value of being Denied said Rights. *'In the eyes of the law (this right) is so valuable that damages are presumed from the wrongful deprivation of it, and*

*the amount of damages is a question peculiarly appropriate for the determination of the jury because each member of the jury has personal knowledge of the value of that right,'* (Basista v. Weir 340 F.2d 74). *'Apart from special monetary damages it is open to the jury in case such as this to make a determination as to the amount that the Plaintiff is entitled to be awarded for the deprivation. This of course would include his subjective pain and suffering'*, (Rhoads v. Horvat 270 F.Supp 307).

104.    Plaintiff was severely damaged when he was given the option to avoid arrest, by giving up his Rights to Due Process and Equal Protection of the Law by not reporting his cellular phone damaged by The Male. Plaintiff does not feel any description of this distress injury can be properly described for the empathy needed to understand the severity of The Plaintiffs distress which has continued since the inception of Plaintiffs arbitrary detainment, arrest, denial of Equal Protection, and denial of Due Process. Plaintiff arbitrarily lost his freedom (liberty). Plaintiff has lost a significant part of his Quality of Life because Defendants Lewis and Philippe have injured Plaintiffs belief in the guarantee of Liberty. Such harm *'can be inferred from the circumstances as well as established by the testimony'*, (Seaton v. Sky 491 F.2d 634). Plaintiff has lost a significant amount of his Quality of Life, because Plaintiff does not feel comfortable in 'the world' knowing that Defendant 'City' and those of their kind, can at will, deny Citizens Liberty, and the price for redemption, is emotionally distressing as would be inferred from the circumstances.

Plaintiff seeks Compensation.
105.    Compensation for Injury resulting from Plaintiffs Loss of Time. Plaintiff is pro se litigate. It has taken Plaintiff almost 3 years to research and write complaint at bar. As a result of Plaintiffs Constitutional Rights being violated by Defendants Philippe and Lewis, Plaintiff has had to endure significant emotional injury caused by the significant loss of time, reliving, studying and writing Complaint at bar, daily. Plaintiff actually lost time with his family and loved ones, lost time from seeking employment, lost time with employment, and all without choice because this is the cost in The United States of America for vindication of Constitutional Rights; and for this, Plaintiff seeks compensation. For this reliving of painful events, and extensive study in Constitutional Law, Plaintiff seeks compensation for loss of time.

106.    Intentionally Inflicting of Emotional Distress can be inferred at bar because, The Material Evidence does not support The Arrest. Defendants Philippe and Lewis cannot offer This Court any Material Evidence to support their detainment or arrest of The Plaintiff, thereby negating any reasonable probability that probable cause existed. With no probable cause, Triers of Fact can infer, Defendants Philippe and Lewis intentionally denied Plaintiffs Constitutional Rights, and intentionally defied Defendant 'City' Police Departmental Policy; for this, Plaintiffs are sued in their Individual Capacity, and Plaintiff seeks Compensatory and Punitive Damages. Plaintiff insists, it is obvious that arbitrarily, and, maliciously arresting an innocent Plaintiff is recognized by civilized professionals such as Defendants Philippe and Lewis to cause severe emotional distress (such as a kidnapping would cause distress), and, that manipulating evidence to effectuate an arrest would make the distress injury intentional, as seen supra ¶61. At bar Plaintiff displayed his determination, and faith in The Justice of American Law Enforcement by waiting to make a report concerning his cellular phone. Plaintiff severely emotionally injured when despite his faith in justice, and determination to hold The Male responsible, he was

intentionally detained and arrested despite the material evidence. Plaintiff feels The Triers of Fact can infer the severity of this injury '*based on testimony*', (Seaton v. Sky 491 F.2d 634,636).

107.     Plaintiff seeks punitive damages for Section 1983 injuries at bar, (Smith v. Wade 461 U.S. 30). '*A plaintiff is entitled to punitive damages if the jury finds that the defendant's conduct was reckless or callously indifferent to the federally protected rights of others or if the defendant was motivated by an evil intent. The jury has the duty to assess the amount of punitive damages. Because the purpose of punitive damages is to punish the wrongdoer, such damages may be awarded even if the plaintiff cannot show actual damages*', (Basista v. Weir 340 F.2d 74). Defendants Philippe and Lewis show 'active consciousness' to malicious, reckless, callously indifferent, arbitrary behavior that caused Plaintiffs denial of his Federally Protected Rights to Liberty, Due Process, and Equal Protection of the Law under The Fourteenth Amendment, and, effectuated the illegal detainment and arrest of his person, in violation of The Fourth Amendment to The United States Constitution.

108.     Plaintiffs 'police record' to date, though expressed as 'dismissed', shows false arrest record of 'aggravated assault with a deadly weapon' because of Defendants Philippe and Lewis. This creates continued injury of defamation and humiliation upon The Plaintiff, '*moreover, statements that are defamatory per se by their very nature are likely to cause mental and emotional distress; as well as injury to reputation, so there arguably is little reason to require proof of this kind of injury*', (Carey v. Pipus 55 L Ed 2d 264 at [8]). Plaintiff complains 'assault with a deadly weapon', has been, is, and will be, a continued burden upon Plaintiff with regard to future and present employers. Plaintiff seeks compensation for this defamation and humiliation.

109.     '*Generally compensatory damages should attempt to place The Plaintiff in a position similar to the one she or he would have been in had the violation not occurred*', (Cunningham v. Overland 804 f.2d 1069 [4]). '*[E]xpert medical evidence is not required to prove emotional distress in section 1983 cases*', (Bolden v. Southeastern 21 F.3d 29, 36). Plaintiff seeks compensatory damages as well as punitive damages as Defendants Philippe and Lewis must be deterred from knowingly violating The Constitutional Rights of Citizens, even if validated by their employer Defendant 'City'. Florida Statute 768.72 (2) states, '*A defendant may be held liable for punitive damages only if the trier of fact, based on clear and convincing evidence, finds that the defendant was personally guilty of intentional misconduct or gross negligence*'. Florida Statute 768.72 (a) states, '*Intentional Misconduct' means that the defendant had actual knowledge of the wrongfulness of the conduct and the high probability that injury or damage to the claimant would result and, despite that knowledge, intentionally pursued that course of conduct, resulting in injury*'. Florida Statute 768.72 (b) states, '*'Gross negligence' means that the defendant's conduct was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct*'. Florida Statute 768.72 (3) states, '*In the case of an employer, principal, corporation, or other legal entity, punitive damages may be imposed for the conduct of an employee or agent only if the conduct of the employee or agent meets the criteria specified in subsection (2) and: (b) The officers, directors, or managers of the employer, principal, corporation, or other legal entity knowingly condoned, ratified, or consented to such conduct*'

110.    *'Because only arguable probable cause is required, "the inquiry is not whether probable cause existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed"'*, (Holmes v Kaynda 321 F.3d 1079 [20-22]). Defendants can present 'no' material evidence to support the detention and arrest at bar of The Plaintiff.

       **WHEREFORE** The Plaintiff seeks an ORDER awarding damages, injunctive, and further Relief as This Court deems necessary, just and proper, for The Claims identified herein, and supported thereof, with Plaintiff <u>EXHIBTS</u> which are attached.

**JURY DEMAND**
PLAINTIFF SEEKS JURY TRIAL.

By: _____
Lamont Collins
1545 NW 7th Ave
Miami, Florida 33136
<u>Deshawn_Collins@yahoo.com</u>

**NOTICE OF SERVICE:**
I hereby certify that a true exact copy hereof, will be served upon those identified in The Attached Service List.

_____
Lamont Collins

**SERVICE LIST:**

-   City of Miami (e-serve at: <u>law@miamigov.com</u>)

-   Wandler Philippe and Kenneth Lewis
    400 NW Second Avenue
    Miami, Miami-Dade County
    Florida, 33128
    (305) 603-6640

-   Doubletree Grand Hotel (DTGH)
    1717 North Bayshore Drive
    Miami, Mimai-Dade County
    Florida, 33132
    (305) 372-0313