UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:21-cv-20635-GAYLES/TORRES

**LAMONT COLLINS**,

    Plaintiff,

v.

**CITY OF MIAMI, OFFICER KENNETH LEWIS,
OFFICER WANDLER PHILIPPE, and
DOUBLETREE GRAND HOTEL (DTGH)**,

    Defendants.
_____/

## ORDER

**THIS CAUSE** comes before the Court on Defendant Doubletree Grand Hotel's Motion to Dismiss (the "Motion") [ECF No. 16]. The Court has reviewed the Motion and the record and is otherwise fully advised. For the following reasons, the Motion is granted.

## BACKGROUND[1]

### I.    Factual Allegations

On February 13, 2018, Plaintiff Lamont Collins, while walking to dinner, decided to avoid a crowded sidewalk by walking on the Doubletree Grand Hotel's (the "Hotel") driveway. Upon entering the driveway, Sandra Bernardi ("Bernardi"), unknown to Plaintiff at that time, walked into his path. In response, Plaintiff addressed Bernardi, then began to walk away. Bernardi

---

[1] As the Court proceeds on a motion to dismiss, it accepts Plaintiff's allegations in the Complaint, [ECF No. 1], as true. *See Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (per curiam). Moreover, the Court may properly consider the exhibits attached to the Complaint. *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016) ("A district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." (citation omitted)); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

proceeded to shove him, yelled profanities at him, and swatted at Plaintiff's arms. Ghislain Fourqueler ("Fourqueler"), unknown to Plaintiff at that time, ran out of the Hotel to assist Bernardi. In response, Plaintiff attempted to retrieve his knife, failed, and "retreated across the street[.]" [ECF No. 1 at 4]. Fourqueler chased him; Plaintiff withdrew his knife; and Fourqueler withdrew, running back inside the Hotel. Fourqueler later ran out of the Hotel with bottles in his hand, which he threw at Plaintiff. Plaintiff withdrew his knife again but Fourqueler followed him "north away from" the Hotel. *Id.* This startled Plaintiff, causing him to drop his phone. Fourqueler picked it up and smashed it on the ground. Plaintiff once again withdrew his knife, and Fourqueler ran back into the Hotel. During these altercations between Plaintiff, Bernardi, and Fourqueler, Hotel security did not attempt to deter Fourqueler even though at least one security member (the "Hotel Security Member") had watched the whole encounter.

After Plaintiff picked up his phone, he went to the Hotel to talk with the Hotel Security Member as he wanted to hold Fourqueler responsible for his broken phone. The Hotel Security Member told Plaintiff to "just leave" because Bernardi and Fourqueler had left. *Id.* Plaintiff asked the Hotel Security Member to call law enforcement and refused to leave until they came. The Hotel Security Member told Plaintiff that law enforcement was already called "some time ago." *Id.* While waiting for law enforcement, Plaintiff had not seen Bernardi and Fourqueler since they retreated into the Hotel.

Once Miami law enforcement arrived, Plaintiff talked to Defendant Officer Philippe to explain what happened and stated that he wanted to make a police report about his broken phone. Officer Philippe then went to speak with the Hotel Security Member "out of the hearing of [t]he Plaintiff." *Id.* at 5. After that conversation, Officer Philippe told Plaintiff to "just leave" because Bernardi and Fourqueler had left. *Id.* Plaintiff told Officer Philippe that he would not leave without

2

making a police report. At some point after, Officer Philippe searched Plaintiff's bag and found his knife, which Plaintiff explained he used to deter Fourqueler. Officer Philippe then went to speak with Defendant Officer Lewis; and after that conversation, Officer Philippe handcuffed Plaintiff and put him into the officers' vehicle. Officers Philippe and Lewis then went inside the Hotel escorted by the Hotel Security Member, found Bernardi and Fourqueler, and took their statements. The Hotel Security Member also showed Officers Philippe and Lewis a surveillance video. Officers Philippe and Lewis returned, alerted Plaintiff of the surveillance video, and arrested him for assault with a deadly weapon. Plaintiff went to jail, but the charges were eventually dismissed.

## II.     Procedural History

On February 12, 2021, Plaintiff filed a *pro se* Complaint against the City of Miami, Officers Lewis and Philippe, and the Hotel. Plaintiff appears to bring the following causes of action against the Hotel: (1) negligence; (2) gross negligence; (3) intentional infliction of emotional distress; (4) civil rights violation under 42 § U.S.C. 1983; and (5) conspiracy to commit a civil rights violation under 42 § U.S.C. 1985(3). [ECF No. 1]. Plaintiff also seeks punitive damages against the Hotel. In response, the Hotel filed the instant Motion arguing that the Court should dismiss the Complaint because (1) the Hotel was insufficiently served; (2) it is a shotgun pleading; (3) it fails to state a claim under Rule 12(b)(6); and (4) there is a lack of subject matter jurisdiction.

## LEGAL STANDARD

To survive a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" meaning that it must contain "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While a court must accept well-pleaded factual allegations as true, "conclusory allegations . . . are not entitled to an assumption of truth—legal conclusions must be supported by factual allegations." *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010). "[T]he pleadings are construed broadly," *Levine v. World Fin. Network Nat'l Bank*, 437 F.3d 1118, 1120 (11th Cir. 2006), and the allegations in the complaint are viewed in the light most favorable to the plaintiff. *Bishop v. Ross Earle & Bonan, P.A.*, 817 F.3d 1268, 1270 (11th Cir. 2016). At bottom, the question is not whether the claimant "will ultimately prevail . . . but whether his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (internal quotation and citation omitted).

"*Pro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed." *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998) (citing *Fernandez v. United States*, 941 F.2d 1488, 1491 (11th Cir. 1991)). "When it appears that a *pro se* plaintiff's complaint, if more carefully drafted, might state a claim, the district court should give the *pro se* plaintiff an opportunity to amend his complaint instead of dismissing it." *Humphrey v. Sec'y, U.S. Dep't of Homeland Sec.*, 597 F. App'x 571, 573 (11th Cir. 2014) (citation omitted). "However, this leniency does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Odion v. Google Inc.*, 628 F. App'x 635, 637 (11th Cir. 2015) (citations and internal quotation marks omitted).

## DISCUSSION

### I. The Complaint Is A Shotgun Pleading

The Court finds that as it applies to the claims against the Hotel, the Complaint is an impermissible shotgun pleading, which provides a basis for dismissal. *See Weiland v. Palm Beach Cty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) ("Complaints that violate [] Rule 8(a)(2) . . . are often disparagingly referred to as 'shotgun pleadings.'"). Plaintiff's Complaint improperly commingles multiple causes of action in single counts. *Id.* at 1322–23. Additionally, the Complaint is anything but "short and plain[.]" Fed. R. Civ. P. 8(a)(2). Nonetheless, the Court will address additional arguments raised by the Hotel that also warrant dismissal of the Complaint. Should Plaintiff attempt to amend his pleading, the Court advises him to adhere to the procedural drafting requirements.

## II.  Plaintiff's Federal Claims Fail

Plaintiff appears to assert two federal causes of action against the Hotel: (1) conspiracy to commit a civil rights violation under 42 § U.S.C. 1985(3); and (2) a civil rights violation under 42 § U.S.C. 1983. Specifically, Plaintiff argues that the Hotel gave false information to Officers Lewis and Philippe regarding the altercations between Plaintiff, Bernardi, and Fourqueler as part of a conspiracy to prevent Plaintiff from making a police report and to get him arrested.

To state a claim for relief under § 1985(3), a plaintiff must allege sufficient facts showing:

> (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Jimenez v. Wizel*, 644 F. App'x 868, 874 (11th Cir. 2016) (citation omitted). As to the first element, a conspiracy requires a plaintiff to "provide sufficient allegations to make plausible that there was a 'meeting of the minds between two or more persons to accomplish [the] common and unlawful plan.'" *Id.* at 873 (citation omitted). As to the second element, a plaintiff "must properly plead an

allegation that 'some racial or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action.'" *Id.* at 874 (citation omitted). Plaintiff's allegations fail to meet both of those requirements.

First, Plaintiff's § 1985(3) claim fails because he does not specifically allege that he is within a class of persons entitled to such relief. While in other counts, Plaintiff makes offhand analogies to his situation being similar to the "loss of Liberty early Black Africans who were captured by Europeans as slaves" faced, [ECF No. 1 at 17], and "slavery," *id.* at 22, nowhere does he allege that he is Black or that he is a part of any other applicable class. Instead, Plaintiff simply recites the elements of the cause of action and states that Defendants would not have acted "without racial or class-based animus." *Id.* at 26.

The same is true as to Plaintiff's allegations of conspiracy. In sum, Plaintiff argues that the Hotel conspired with Officers Philippe and Lewis because Plaintiff was arrested after the Hotel Security Member talked to the officers and provided them with surveillance video. Specifically, Plaintiff claims that he would not have been arrested but-for false information and evidence provided by the Hotel Security Member. However, Plaintiff's allegations that his situation "would have unlikely been undertaken without an agreement / meeting of the minds" between Defendants are both speculative and conclusory. Indeed, Plaintiff admits that he could not hear the conversation between the Hotel Security Member and the officers, that the officers obtained further information from Fourqueler and Bernardi before Plaintiff's arrest, and that the officers claimed to have watched surveillance video of the altercations. Based on these allegations, the Court does not find that the factual allegations support a plausible conspiracy claim against the Hotel.

The Court notes that Plaintiff's § 1983 claim appears to be grounded in a single three-sentence paragraph couched within his § 1985(3) claim. *See* [ECF No. 1 at 29]. As noted earlier,

this renders the Complaint an impermissible shotgun pleading. The § 1983 claim also fails because the allegations are conclusory. "To state a claim for relief under § 1983, a plaintiff must allege that an act or omission committed by a person acting under color of state law deprived him of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Jimenez*, 644 F. App'x at 871. In three rare circumstances, a private party may be held liable as a state actor:

> (1) the State has coerced or at least significantly encouraged the action alleged to violate the Constitution (State compulsion test); (2) the private parties performed a public function that was traditionally the exclusive prerogative of the State (public function test); or (3) the State had so far insinuated itself into a position of interdependence with the private parties that it was a joint participant in the enterprise (nexus/joint action test).

*Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001) (citation and internal quotation marks omitted). Here, Plaintiff fails to sufficiently allege that the Hotel, a private party, was a state actor.

In a conclusory fashion, Plaintiff simply alleges the Hotel violated the statute by "using [t]he [a]uthority of [t]he [c]olor of [l]aw" to deprive him of his constitutional right. [ECF No. 1 at 29]. The remainder of the paragraph rests on the "specific contacts" between the Hotel Security Member and the officers that "illustrate a very close relationship[.]" *Id.* These allegations do not demonstrate that the Hotel was a state actor. And for the reasons set forth above, Plaintiff has failed to sufficiently allege the Hotel's involvement in a conspiracy with the law enforcement officers.

### III.  Plaintiff's State Claims Fail

#### A.  Plaintiff Does Not State a Claim for Negligence or Gross Negligence

Plaintiff appears to allege that the Hotel was negligent because its security failed to stop Fourqueler from attacking Plaintiff. In other words, Plaintiff asserts a negligent security claim. Such a claim sounds in premises liability as opposed to ordinary negligence. *See Nicholson v. Stonybrook Apartments, LLC*, 154 So. 3d 490, 494 (Fla. 4th DCA 2015) ("[N]egligent security

cases fall under the auspices of premises liability as opposed to ordinary negligence."). To maintain a claim for negligence, including in a premises liability action, a plaintiff must show that the defendant owed him a legal duty, that the defendant breached that duty, that the defendant's breach caused him injuries, and that he suffered damages as result. *See Lisanti v. City of Port Richey*, 787 So. 2d 36, 37 (Fla. 2d DCA 2001). Additionally, in a premises liability action, a plaintiff must show "the defendant's possession or control of the premises and notice of the dangerous condition." *Id.*

First, Plaintiff fails to sufficiently allege that the altercation took place on the Hotel's property. While Plaintiff contends he was walking on the driveway outside of the Hotel, he does not allege that the Hotel owned or controlled that walkway. Moreover, Plaintiff states that the altercations with Fourqueler took place outside of the Hotel's driveway when Fourqueler chased Plaintiff after he "retreated across the street" and when Plaintiff was "north away from" the Hotel. [ECF No. 1 at 4]. Plaintiff does not allege that the Hotel exercised control over the other property or otherwise extended its foreseeable zone of risk beyond its own premises. *See Daly v. Denny's, Inc.*, 694 So. 2d 775, 777 (Fla. 4th DCA 1997) (finding no cause of action for negligence against owner of motel adjacent to the parking lot where patron was attacked).

Even assuming the Hotel did own or control the location where the incident took place, Plaintiff does not allege sufficient facts to show the Hotel owed him a duty under the circumstances. A defendant's duty of care in a premises liability action depends "on the plaintiff's status to the land." *Nicholson*, 154 So. 3d at 492 (citation omitted). Plaintiff admits he was merely walking on the driveway outside the Hotel to avoid the crowded sidewalk while on his way to dinner. Thus, Plaintiff is only a licensee. *See Arp v. Waterway E. Ass'n*, 217 So. 3d 117, 121–22 (Fla. 4th DCA 2017) (finding plaintiff who was walking via a shortcut on defendant's property to

8

get home was at best an uninvited licensee). "The only duty a landowner owes to a trespasser or uninvited licensee is 'to avoid willful or wanton harm to him and, upon discovery of his presence, to warn him of any known dangers which would not be open to his ordinary observation.'" *Id.* at 120 (citation omitted). Here, Plaintiff does not sufficiently allege facts to show that the Hotel willfully or wantonly exposed him to harm or failed to warn him of non-obvious known dangers.

Plaintiff also appears to allege that the Hotel was grossly negligent regarding the statements the Hotel Security Member made to law enforcement that led to his arrest. Under Florida law, gross negligence requires a plaintiff to allege the following elements:

> (1) the existence of a composite of circumstances which, together, constitute an imminent or clear and present danger amounting to more than the normal and usual peril; (2) a showing of chargeable knowledge or awareness of the imminent danger; and (3) an act or omission occurring in a manner which evinces a conscious disregard of the consequences.

*Wilder v. JP Morgan Chase Bank, N.A.*, No. 18-CIV-20820, 2018 WL 5629922, at *6 (S.D. Fla. Oct. 30, 2018). Here, Plaintiff asserts he was arrested after Officers Philippe and Lewis talked to the Hotel Security Member, which would not have happened unless the Hotel Security Member provided inaccurate information or evidence. *See* [ECF No. 1 at 20–21] ("[I]t is unfathomable, that [the Hotel] could have possibly relayed the correct material information . . . without gross negligence, because, that material evidence, and testimony le[]d to [t]he Plaintiff[']s arrest[.]"). Such allegations are insufficient to state a claim. Nothing in Plaintiff's allegations indicate a "conscious disregard of the consequences." And the Court is not obligated to accept as true Plaintiff's general, conclusory allegations that the Hotel was grossly negligent.

### B. Plaintiff Does Not State a Claim for Intentional Infliction of Emotional Distress

Plaintiff appears to passingly assert a claim for intentional infliction of emotional distress. *See* [ECF No. 1 at 22–23]. The Court finds that Plaintiff's allegations against the Hotel do not rise to the high standard of "outrageousness" necessary to withstand a motion to dismiss. *See, e.g.*,

*Henning v. Day*, No. 15-CIV-927, 2016 WL 1068482, at *8 (M.D. Fla. Mar. 18, 2016) (finding plaintiff failed to state an IIED claim where plaintiff alleged the defendants gave false statements to the police that led to his arrest); *Lagine v. Key W. Reach Owner, LLC*, No. 17-CIV-10045, 2017 WL 3425911, at *4–5 (S.D. Fla. Aug. 4, 2017) (holding plaintiff's claim of IIED "fall[s] far short of satisfying the second element of outrageousness" where plaintiff alleged her hotel employer failed to protect her from an assault by a hotel guest after the guest assaulted her earlier that day and threatened to return and the hotel told her to return to work in spite of this information).

### C. Plaintiff's Punitive Damages Claim Cannot Stand

Plaintiff seeks punitive damages for the foregoing causes of action. However, as the Court has dismissed Plaintiff's causes of action against the Hotel, punitive damages are not recoverable.

### CONCLUSION[2]

Accordingly, it is **ORDERED AND ADJUDGED** that Defendant Doubletree Grand Hotel's Motion to Dismiss, [ECF No. 16], is **GRANTED**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 12th day of February, 2022.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT JUDGE

---

[2] In light of the Court's findings, it need not address the Hotel's remaining arguments.